

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-24-1998

# Simpson v. Kay Jewelers

Precedential or Non-Precedential:

Docket 97-3224

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Simpson v. Kay Jewelers" (1998). *1998 Decisions.* Paper 89.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/89

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 24, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-3224

SANDRA L. SIMPSON
        Appellant

v.

KAY JEWELERS,
Division of Sterling, Inc.

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civ. No. 95-cv-00270J)

Submitted Under Third Circuit LAR 34.1(a)
January 22, 1998

Before: BECKER,* STAPLETON, Circuit Judges, and
POLLAK, District Judge.**

(Filed: April 24, 1998)

        KENNETH A. WISE, ESQUIRE
        126 Locust Street
        Harrisburg, PA 17108
        Attorney for Appellant
        Sandra L. Simpson

_____

* Honorable Edward R. Becker, United States Circuit Judge for the
Third Circuit, assumed Chief Judge status on February 1, 1998.

** Honorable Louis H. Pollak, United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

        MARTIN J. SAUNDERS, ESQUIRE
        Jackson, Lewis, Schnitzler &
         Krupman
        One PPG Place, 28th Floor
        Pittsburgh, PA 15222
         Attorney for Appellee Kay Jewelers

OPINION OF THE COURT

BECKER, Chief Circuit Judge.

This is an appeal by Sandra Simpson from the grant of
summary judgment for defendant Kay Jewelers in a suit
alleging age discrimination in violation of the Age
Discrimination in Employment Act ("ADEA"), 29 U.S.C.A.
SS 621-34 (1985 & Supp. 1997), and the Pennsylvania
Human Relations Act ("PHRA"), Pa. Stat. Ann. tit. 43,
SS 951-63 (1991 & Supp. 1997).1  Simpson contends that
_____

1. In relevant part, the ADEA provides that

        It shall be unlawful for an employer --

        (1) to fail or refuse to hire or to discharge any individual or
        otherwise discriminate against any individual with respect to his
        compensation, terms, conditions, or privileges of employment,
        because of such individual's age;

        (2) to limit, segregate, or classify his employees in any way which
        would deprive or tend to deprive any individual of employment
        opportunities or otherwise adversely affect his status as an
        employee, because of such individual's age.

29 U.S.C. S 623(a). In relevant part, the PHRA provides that

        It shall be an unlawful discriminatory practice . . . [f]or any
        employer because of the . . . age . . . of any individual or
        independent contractor, to refuse to hire or employ or contract
with,
        or to bar or to discharge from employment such individual or
        independent contractor, or to otherwise discriminate against such
        individual or independent contractor with respect to compensation,
        hire, tenure, terms, conditions or privileges of employment or
        contract, if the individual or independent contractor is the best
able
        and most competent to perform the services required.

Pa. Stat. Ann. tit. 43, S 955.

evidence of the more favorable treatment of one allegedly similarly situated younger employee is sufficient to permit the inference that the employer's proffered reason for her demotion is a pretext for discrimination. We reject this contention and hold that a plaintiff does not create an issue of fact merely by selectively choosing a single comparator who was allegedly treated more favorably, while ignoring a significant group of comparators who were treated equally to her.

Simpson also contends that pretext can be inferred from alleged inconsistencies between Kay Jewelers' proffered reasons and its actions. We also reject this contention and, following Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509 (3d Cir. 1993) (pretext turns on the qualifications and criteria identified by the employer, not the categories the plaintiff considers important), conclude that Simpson has not presented evidence sufficient to infer that Kay Jewelers' proffered explanations were a pretext for discrimination. We therefore affirm.

I.

Plaintiff, Sandra Simpson, was an employee of Kay Jewelers in the DuBois Mall in Clearfield County, Pennsylvania. Kay Jewelers was a chain of retail jewelry stores, which was purchased by Sterling, Inc. in 1990. Simpson was originally hired as a bookkeeper in May, 1973, and promoted to assistant manager in 1976. She was promoted to store manager in 1979, a position she held until her demotion in 1994.

From 1991 to 1994, Simpson's forte was her individual jewelry sales. The overall store sales, however, were considered deficient. Kay Jewelers set sales quotas for each of its stores, taking into account such factors as economic conditions, mall conditions, and competition. From September 1991 to March 1994, Simpson's store satisfied its monthly store sales quota eight out of thirty-one months. During the fourteen months immediately prior to her demotion, it met quota three times. The district manager repeatedly indicated on Simpson's evaluations that she needed to improve her quota performance and

3

increase store sales.2 The 1991, 1992, and 1994 evaluations identified increased sales as "major developmental needs." The 1993 evaluation stated that Simpson needed to "work to get 6/6 [quotas]" and "improve [store sales] to min of 103% [of planned sales]." The district manager repeatedly identified increased staff training, role playing, and staff motivation as necessary to improve overall sales. The "action plan for development" in each evaluation from 1991 through 1994 listed the need for daily staff training and role playing. At least twice, the district manager told Simpson she would be demoted if she did not meet the store sales quotas.

In March 1993, after Simpson failed to meet sales quotas in any of the preceding six months, the district manager created a Get It Done list ("GID"), which identified problem areas and defined "action plans" to correct the problems. In the GID, the district manager stated that Simpson's performance in areas other than store sales were basically up to standard, but that sales, the most important area, was lacking. The district manager concluded that "lack of training, direction, staffing, store moral[e], and aggressive sales efforts" were the "key reason[s] for the substandard sales production." Furthermore, the district manager recommended that if "compliance is not obtain[ed] and results achieved that [Kay Jewelers] should consider a management change (demotion, not termination)." Id.

As part of the GID, Simpson was instructed to maintain a sixty-day log of daily training sessions to be held with each employee. Simpson testified at her deposition that daily training was held, but not with each employee each day. She also testified that some, but "not a lot" of role playing was conducted. One of Simpson's employees testified that she never received training through role playing. Another employee testified that role playing was not conducted on a daily basis. The store met its sales quotas for both months during the sixty-day period. However, from the end of the GID period through March

_____

2. Simpson had two district managers during the period in question. William Miller was district manager through August 1991. Mark Law was district manager from August 1991 through March 1994.

1994, the store sales quotas were met only once out of the ten months. In March 1994, the district manager recommended that Simpson be demoted because of her unacceptable store sales and continuous failure to train and motivate staff to meet sales quotas. The recommendation was approved by two Vice Presidents, and Simpson was demoted to sales associate at the age of 57. Simpson was replaced by Becky Bush, a 42 year old woman.

Simpson filed a claim with the Equal Employment Opportunity Commission ("EEOC") in May 1994, alleging age discrimination. The EEOC determined there was no reasonable cause to believe that there was unlawful discrimination. Simpson then filed suit in the district court for the Western District of Pennsylvania alleging discrimination in violation of the ADEA and PHRA. After discovery, Kay Jewelers moved for summary judgment. The magistrate judge concluded that Simpson had failed to make out a case of pretext, and recommended that summary judgment be entered for Kay Jewelers. The district judge adopted the magistrate judge's report and granted Kay Jewelers' motion for summary judgment. This timely appeal followed.

The district court exercised jurisdiction pursuant to 28 U.S.C. SS 1331, 1367. We exercise appellate jurisdiction pursuant to 28 U.S.C. S 1291 and our review of the district court's grant of summary judgment is plenary. Ersek v. Township of Springfield, 102 F.3d 79, 83 (3d Cir. 1996).3

_____

3. In reviewing a grant of summary judgment we

     (i) resolve conflicting evidence in favor of the nonmovant, (ii) do not
     engage in credibility determinations, and (iii) draw all reasonable
     inferences in favor of the nonmovant. The movant has the burden of
     pointing out that evidence cognizable in a motion for summary
     judgment which the movant believes entitles it to summary
     judgment; the nonmovant must then respond by pointing to
     sufficient cognizable evidence to create material issues of fact
     concerning every element as to which the nonmoving party will bear
     the burden of proof at trial.

Fuentes v. Perskie, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

II.

Simpson advances a pretext claim which is perforce
analyzed under the three steps of the McDonnell Douglas
line of cases, see McDonnell Douglas Corp. v. Green, 411
U.S. 792, 93 S.Ct. 1817 (1973); Texas Dep't of Community
Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089 (1981); St.
Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S.Ct. 2742
(1993), that we have applied to ADEA cases, see e.g.,
Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir.
1995).4 We set forth the familiar McDonnell Douglas
framework in the margin.5 We will not discuss steps one

_____

4. It has also been applied to PHRA cases. See Bernard v. Bethenergy
Mines, Inc., 837 F. Supp. 714, 715 (W.D. Pa. 1993), aff'd, 31 F.3d 1170
(3d Cir. 1994); Fairfield Township Volunteer Fire Co. v. Commonwealth,
609 A.2d 804, 805 (Pa. 1992).

5. Under the McDonnell Douglas line of cases, as applied to the ADEA
and the analogous provision of the PHRA, there are three steps in the
analysis of pretext discrimination cases. See McDonnell Douglas, 411
U.S. at 802-04, 93 S.Ct. at 1824-25. First, the plaintiff must establish a
prima facie case of discrimination. Hicks, 509 U.S. at 506, 113 S.Ct. at
2746-47. This is done if she shows that she (1) is a member of the
protected class, i.e. at least 40 years of age, 29 U.S.C. S 631(a), (2) is
qualified for the position, (3) suffered an adverse employment decision,
and (4) in the case of a demotion or discharge, was replaced by a
sufficiently younger person to create an inference of age discrimination,
Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 897 (3d Cir. 1987).
Second, upon such a showing by the plaintiff, the burden shifts to the
employer to produce evidence of a legitimate nondiscriminatory reason
for the adverse decision. Hicks, 509 U.S. at 506-07, 113 S.Ct. at 2747.
Third, the plaintiff must then demonstrate that the employer's
articulated reason was not the actual reason, but rather a pretext for
discrimination. Id. at 507; 113 S.Ct. at 2747.

Simpson incorrectly defines the second step as shifting the burden to
the employer to show that its legitimate reason, alone, would have
induced the employment decision. Such a burden of showing that the
same decision would have been made absent discriminatory motives
applies in Price Waterhouse mixed motive cases, not McDonnell Douglas
pretext cases. See Price Waterhouse v. Hopkins , 490 U.S. 228, 276, 109
S.Ct. 1775, 1805 (1989) (O'Connor, J., concurring); Walden v. Georgia-
Pacific Corp., 126 F.3d 506, 512 (3d Cir. 1997), petition for cert. filed,
__
U.S.L.W. __ (U.S. Feb. 17, 1998) (No. 97-1350). See generally Mardell v.
Harleysville Life Ins. Co., 31 F.3d 1221, 1225 n.6 (3d Cir. 1994)

6

and two of the framework because although the parties contest the district court findings that Simpson established a prima facie case of discrimination and that Kay Jewelers proffered a legitimate nondiscriminatory reason for the demotion, we assume arguendo that these steps have been satisfied and proceed to step three of the analysis.6

To survive summary judgment when the employer has articulated a legitimate nondiscriminatory reason for its action, the plaintiff must

> point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). To discredit the employer's articulated reason, the plaintiff need not produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons, Sempier, 45 F.3d at 732, nor produce additional evidence beyond her prima facie case, Fuentes, 32 F.3d at 764. The plaintiff must, however, point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate

_____

(summarizing Price Waterhouse evidentiary scheme), vacated, 514 U.S. 1034, 115 S.Ct. 1397 (1995), and modified in part, 65 F.3d 1072 (3d Cir. 1995). This case is clearly not a mixed motive case because Simpson has pointed to no direct evidence that the "decisionmakers placed substantial negative reliance on [age] in reaching their decision." Price Waterhouse, 490 U.S. at 277, 109 S.Ct. at 1805; Walden, 126 F.3d at 513. Rather, Simpson points to evidence from which she claims pretext can be inferred. Armbruster v. Unisys Corp., 32 F.3d 768, 783 (3d Cir. 1994).

6. We note, however, that Simpson's challenge to Kay Jewelers' proffered reason is misplaced to the extent she claims that the explanation is invalid because there was no evidence that it was the actual reason for her demotion. In pretext discrimination cases such as this, "[t]he employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Fuentes, 32 F.3d at 763 (emphasis added).

7

reasons [such] that a reasonable factfinder could rationally find them `unworthy of credence' " and hence infer that the proffered nondiscriminatory reason "did not actually motivate" the employer's action. Id. at 764-765 (quoting Ezold, 983 F.2d at 531).

To show that discrimination was more likely than not a cause for the employer's action, the plaintiff must point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that age was a motivating or determinative factor in the employment decision. Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1111 (3d Cir. 1997). For example, the plaintiff may show that the employer has previously discriminated against her, that the employer has discriminated against other persons within the plaintiff's protected class or within another protected class, or that the employer has treated more favorably similarly situated persons not within the protected class. Fuentes, 32 F.3d at 765.

Kay Jewelers asserts that Simpson was demoted because she repeatedly failed to attain the store sales quotas and failed to adequately train and motivate her staff to meet quotas. Simpson does not dispute her failure to attain the store sales quotas or to adequately train her staff, but does make numerous arguments in an attempt to both discredit these reasons and show that discrimination was more likely than not the motivating cause of her demotion. Simpson primarily relies on the fact that Dolly Field, a younger manager, was not demoted or fired.7 Simpson argues that she and Field were similarly situated because their stores were the same size, they were supervised and evaluated by the same district manager, and their sales quotas took into account the economics of store location.8  Simpson submits that her performance was superior to Field's because in

_____

7. Dolly Field became a store manager in 1991. She was 26 years old at the time Simpson was demoted.

8. Kay Jewelers argues that the two stores are not comparable, pointing to differences in mall occupancy rates, local competition, and store appearance. The district court assumed the stores were comparable. We will not address the issue in light of the flaws in Simpson's arguments discussed infra.

8

both 1993 and 1994 her evaluation scores for sales were higher than Field's and both she and Field received an overall rating of "good".9 Simpson then claims that despite being evaluated superior to Field, Field was retained as manager, while she was demoted; Field was praised, while she was criticized; and Field received a higher score in "store performance areas," a category Simpson argues is directly related to store sales. According to Simpson, this evidence of Field's more favorable treatment discredits Kay Jewelers' proffered reasons and leads to the inference that age discrimination was more likely than not the motivating cause of her demotion. Simpson's reliance on Field is misplaced for the reasons that follow.

III.

First, Simpson's reliance on Field is misplaced because she cannot selectively choose a comparator. The plaintiff has the burden of demonstrating that similarly situated persons were treated differently. Burdine, 450 U.S. at 258, 101 S.Ct. at 1096. The employer's actions are considered in light of its actions towards the allegedly more favored group, in this case younger managers. Ezold 983 F.2d at 527; McDonnell Douglas, 411 U.S. at 804; 93 S.Ct. at 1825 (employer may take adverse action, but only if based on criteria applied to members of all races). However, the mere favorable treatment of one younger manager as compared

---

9. The evaluation forms indicate that Simpson's overall scores were 38.2 in 1993 and 35.8 in 1994, both equivalent to a "needs improvement" rating; whereas Field's scores were 40.3 and 40.5, respectively, both equivalent to a "good" rating. However, Simpson alleges that her overall scores, based on the unmodified version of her 1993 evaluation and the correction of an alleged error in the 1994 evaluation, were "40" in both years, equivalent to a "good" rating. The original 1993 evaluation was modified when the district manager reduced by two the points given to Simpson in the "charge accounts" category. The district manager contends that the change was made because he erroneously awarded points for performance that was actually below the corporate standard. Simpson alleges that the 1994 scoring for sales production was incorrect because her 90% performance in store sales versus planned sales should have warranted two points within the category and an additional 3.8 points overall.

to one older manager may not be sufficient to infer age discrimination.

This is not to say that evidence of the more favorable treatment of a single member of a non-protected group is never relevant, but rather that the evidence can not be viewed in a vacuum. See Ezold, 983 F.2d at 539 (viewing record as a whole in finding insufficient evidence that plaintiff was treated more severely than her male associates); Waldron v. SL Indus., Inc., 56 F.3d 491, 496-97 (3d Cir. 1995) (considering evidence that one younger manager was treated more favorably despite having difficulties similar to plaintiff, where additional evidence tended to discredit employer's proffered reason). A decision adversely affecting an older employee does not become a discriminatory decision merely because one younger employee is treated differently. See Billet v. CIGNA Corp., 940 F.2d 812, 827-28 (3d Cir. 1991) (finding plaintiff's evidence of younger employees benefiting from company reorganization insufficient to withstand directed verdict for employer). The ultimate inquiry is whether the decision was motivated by the affected employee's age. Id. at 827.

We find instructive the Seventh Circuit's decision in Bush v. Commonwealth Edison Co. There, the court held that just as an employer cannot insulate itself from claims of racial discrimination by identifying a token black person whom it treated with abnormal leniency, a black plaintiff cannot establish racial discrimination by singling out one white person who was treated more favorably when there were other white persons who were treated less favorably than other black persons. 990 F.2d 928, 931 (7th Cir. 1993). "Such a pattern, in which blacks sometimes do better than whites and sometimes do worse, being random with respect to race, is not evidence of racial discrimination." Id. We agree, because to hold otherwise would be to permit the inference of discrimination anytime a single member of a non-protected group was allegedly treated more favorably than one member of the protected group, regardless of how many other members of the non-protected group were treated equally or less favorably.

Such an inference may be acceptable at the prima facie stage of the analysis, see Burdine, 450 U.S. at 253, 101

10

S.Ct. at 1094 (recognizing that plaintiff's burden to establish a prima facie case is not "onerous"), where the inquiry is based on a few generalized factors, Hicks 509 U.S. at 516, 113 S.Ct. at 2752, but not necessarily at the pretext stage where the factual inquiry into the alleged discriminatory motives of the employer has risen to a new level of specificity, see id.; Burdine, 450 U.S. at 255, 101 S.Ct. at 1095. We recognize, as did the Seventh Circuit in Bush, that freedom from discrimination is "an individual rather than a group entitlement." Bush, 990 F.2d at 931; 29 U.S.C. S 623(a)(1) (prohibiting age discrimination against any "individual"); see also Connecticut v. Teal, 457 U.S. 440, 453–55, 102 S.Ct. 2525, 2534–35 (1982) (recognizing that similar provision in Title VII protects individual employee, rather than group). However, there still must be evidence from which to infer discrimination apart from the fact that some members of one group are sometimes treated better and sometimes treated worse than members of another group. Bush, 990 F.2d at 931. As stated by the district court, the plaintiff can not "pick out one comparator who was not demoted amid a sea of persons treated the same as her" to establish a jury question. Simpson v. Kay Jewelers, No. 95–270J, mem. order at 2 (W.D. Pa. Mar. 18, 1997) (footnote omitted).

Simpson relies solely on Field as a comparator in arguing that evidence of less favorable treatment gives rise to an inference of discrimination. She does not discuss any of the thirty-five other managers who, between 1992 and 1994, were demoted to sales associate positions because of their store sales performance.10 Of the thirty-five, all were younger than Simpson and thirty-four were under the age of 40. Thus, even if Simpson was similarly situated to Field but treated less favorably, see infra, Simpson's reliance on a single member of the non-protected class is insufficient to give rise to an inference of discrimination when Simpson was treated the same as thirty-four members of the non-

_____

10. Simpson incorrectly asserts that Kay Jewelers did not present any evidence as to the reason for these thirty-five demotions. An affidavit submitted by Kay Jewelers and Kay Jewelers' answers to Simpson's interrogatories state that the thirty-five persons were demoted because of problems with store sales. Simpson presents no evidence to the contrary.

protected class. Simply stated, to show that Kay Jewelers' proffered reasons were pretext, Simpson can not pick and choose a person she perceives is a valid comparator who was allegedly treated more favorably, and completely ignore a significant group of comparators who were treated equally or less favorably than she.

IV.

Moreover, even if Field were a proper comparator, Simpson's reliance on her would still be misplaced. In determining whether similarly situated nonmembers of a protected class were treated more favorably than a member of the protected class, the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action. Ezold, 983 F.2d at 528. The employee's positive performance in another category is not relevant, id., and neither is the employee's judgment as to the importance of the stated criterion, Healy v. New York Life Ins. Co., 860 F.2d 1209, 1216 (3d Cir. 1988). Furthermore, the court does not subjectively weigh factors it considers important. Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 331 (3d Cir. 1995); see also Ezold, 983 F.2d at 528 (rejecting district court's subjective weighing of plaintiff's abilities). Rather, the plaintiff must point to evidence from which a factfinder could reasonably infer that the plaintiff satisfied the criterion identified by the employer or that the employer did not actually rely upon the stated criterion. Fuentes, 32 F.3d at 767. Compare Brewer, 72 F.3d at 331–32 (finding that plaintiff's receipt of performance bonus raised issue of fact as to whether employer's performance–based explanation for discharging plaintiff was pretext) with Ezold, 983 F.2d at 528–29 (finding that plaintiff's abilities in areas other than legal analysis not relevant in determining if law firm's legal analysis explanation for not promoting plaintiff was pretext).

Simpson relies completely on evaluation scores in arguing that, as compared to Field, her allegedly superior performance but less favorable treatment discredits Kay Jewelers' proffered reasons for her demotion. Kay Jewelers, however, did not represent that it relied on evaluation

12

scores. Thus, Simpson's view of her performance, as measured by evaluation scores, is not relevant. Instead, focusing on the stated criterion -- sales quotas-- Field's performance was superior to Simpson's, a result Simpson does not dispute. Field met or surpassed her quotas six out of the fourteen months preceding Simpson's demotion; whereas Simpson only met her quotas three out of the same fourteen months.11 Accordingly, Simpson's evaluation evidence does not create a genuine issue of material fact.

V.

A.

Simpson's other arguments are also inadequate to survive summary judgment. Simpson argues that the use of sales quotas as the criterion is suspect. She claims that using performance on sales quotas is inconsistent with evaluation scoring, and points to the fact that despite Field having satisfied her sales quota more often than Simpson, Field's evaluation scores in all sales criteria were equal to or below Simpson's. This, according to Simpson, counsels that meeting sales quotas is not determinative of the adequacy of a manager's performance. Implicit in this argument is the contention that evaluation scores are more indicative of performance. Whether sales quotas or evaluation scores are a more appropriate measure of a manager's performance is not for the court (or factfinder) to decide. Healy, 860 F.2d at 1216 ("our inquiry . . . is not an independent assessment of how we might evaluate[an] employee"). "The question is not whether the employer made the best, or even a sound, business decision; it is

_____

11. We find no significance in Kay Jewelers' use of sales data from March 1994, the same month Simpson was demoted, in arguing that Field was more qualified for the position. Simpson was demoted on or about March 29 and the decision to demote was made approximately one week earlier. Thus, Simpson's March performance was not likely a factor in the decision. Nonetheless, if we eliminate March 1994 from the equation, Field still performed better than Simpson: Field met her quotas five out of thirteen months, whereas Simpson met her quotas three out of thirteen months.

whether the real reason is [discrimination]." Keller, 130 F.3d at 1109 (quoting Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159 (7th Cir. 1996)) (alteration in original).

In addition, citing Bray v. Marriott Hotels, 110 F.3d 986 (3d Cir. 1997), Simpson claims that this alleged inconsistency with evaluation scores raises an inference of improper motives. In Bray, we found that various discrepancies in how the employer evaluated the criteria purportedly relied on to promote a white person over the black plaintiff, was sufficient to raise questions of fact as to the employer's motives. 110 F.3d at 993-97 (finding discrepancies in the timing of employee evaluations, priority given to factors in ranking candidates, and interpretation of occupational grade levels, all of which were identified as reasons for not promoting plaintiff). Bray, however, is clearly distinguishable. In Bray the discrepancies were in the use of criteria identified as determinative by the employer, see id., whereas in this case Simpson is pointing to discrepancies between a criterion identified by Kay Jewelers (sales quotas) and a criterion asserted only by Simpson (evaluation scores). As we have said, the focus is on the criteria identified by the employer, not the criteria only the plaintiff thinks are important. Healy, 860 F.2d at 1216.12

_____

12. Simpson also asserts that the use of sales quotas is suspect because some of the store managers purportedly demoted for failure to meet quotas were actually "proficient" at meeting their quotas. Simpson points to five managers who minimally met their store sales quotas fifty percent of the time (ten out of twelve times, five out of seven times, four out of six times, seven out of twelve times, and three out of six times). Identifying five out of thirty-five persons who performed substantially better than Simpson at meeting sales quotas does not reasonably lead to the inference that Kay Jewelers did not rely on sales quotas in demoting Simpson. The issue is "whether discriminatory animus motivated the employer, not whether the employer [was] wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765. Thus, this alleged contradiction, which may raise a question as to the wiseness of demoting those five managers, does not give rise to the inference that Kay Jewelers demoted Simpson for something other than the asserted nondiscriminatory reason. To the contrary, the fact that younger managers with superior performance were demoted can be viewed as evidence that age was irrelevant.

14

B.

Simpson argues that the district manager's failure to assist in training, and his interference with store operations, gives rise to an inference that the district manager was seeking to obtain a predetermined result -- her demotion -- for discriminatory reasons. Specifically, Simpson claims that the district manager failed to conduct two two-day training sessions as indicated on the GID,13 was not helpful when present at the store and on one occasion verbally berated the employees such that their morale was low, and failed to provide Simpson with the discount codes necessary to offer merchandise discounts greater than fifteen percent.

To the extent the inference can be made that the district manager's behavior impacted the store's sales, the evidence, without more, does not rise to such a level that a factfinder could reasonably conclude by a preponderance of the evidence that Kay Jewelers acted with a discriminatory motive. Cf. Bonura v. Chase Manhattan Bank, N.A., 795 F.2d 276 (2d Cir. 1986) (finding sufficient evidence to uphold jury verdict for plaintiff allegedly discharged for substandard performance where evidence led to inference that supervisor interfered with employee's efforts, as well as that employee performed adequately and employer sought to hire younger persons).

C.

Simpson argues that the failure to train explanation is inconsistent with Kay Jewelers' actions. She asserts that if training had actually been important then the district manager would have conducted the training sessions pursuant to the GID, and the home office would have sent a trainer to the store. Furthermore, Simpson points to the

_____

13. It is not clear that Simpson is accurately viewing the facts. Simpson claims the district manager was to conduct training sessions, however the GID only indicates that the district manager was to visit the store, which may be interpreted as merely requiring the district manager to follow-up on Simpson's efforts at training. Nonetheless, we resolve conflicting evidence in favor of Simpson.

15

absence of any further counseling on training after her successful completion of the GID. Viewing this evidence in the light most favorable to Simpson,14 at most it leads to an inference that Kay Jewelers did not consider it important to assist Simpson in training her staff; it can not be inferred that it was unimportant for Simpson to improve training on her own accord. The record is replete with evidence, contrary to Simpson's assertion that there is no evidence, that Kay Jewelers considered staff training important. From 1991 to 1994, each of Simpson's evaluations indicated that she needed to conduct more training. The GID specifically required training to be conducted on a daily basis. Accordingly, there is no basis from which to infer that the failure to train explanation was "unworthy of credence."15 Fuentes, 32 F.3d at 765. Simpson makes three additional arguments, which we find completely without merit.16

_____

14. Simpson contends she successfully completed the GID, but Kay Jewelers argues that she did not implement all of the instructions on the list.

15. Simpson also claims that Kay Jewelers did not raise the failure to train explanation to the EEOC. Kay Jewelers' position statement to the EEOC states:

> As a result of the Charging Party's declining performance level and lack of responsive initiative . . . Charging Party was demoted from Store Manager to full-time sales employee . . . based upon Charging Party's failure to improve store sales. . . . [I]t was Charging Party's
> responsibility to maintain . . . the sales of the entire store by training, motivating and managing the store staff.

Appendix at 731a. Even if this statement could be read as not specifically indicating that Simpson's failure to train was a reason for her demotion, it does not make Kay Jewelers' subsequent raising of the explanation pretextual. "[T]he mere fact that a defendant relies on a post hoc [explanation] does not in and of itself create a factual dispute about whether the [explanation was] pretextual." Healy, 860 F.2d at 1215. The plaintiff must point to evidence that demonstrates there is reason to disbelieve the explanation. Id. at 1215-16; see also McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 374 (7th Cir. 1992) (declining to bind defendants to "positions they initially assert in state administrative proceedings by rendering any different position a per se pretext"). Simpson has not pointed to any such evidence.

_____

16. Simpson asserts that (1) the district manager's downward revision of her evaluation score reflects adversely on Kay Jewelers' veracity; (2) the

In sum, Simpson has not provided evidence sufficient to discredit Kay Jewelers' proffered reasons or to permit the inference that discrimination was more likely than not a motivating or determinative cause for her demotion. Accordingly, the district court's order granting summary judgment to the defendant will be affirmed.

_____

downward departure in evaluation scores between 1992 and 1993 is suspicious; and (3) Kay Jewelers' claim of low store morale due to Simpson's alleged "stealing" of associates' sales is a baseless accusation.

As we discussed previously, the focus is on the"qualification[s] the employer found lacking." Ezold, 983 F.2d at 528. Kay Jewelers found that Simpson was deficient in meeting her store sales quotas and in training her staff; Kay Jewelers did not rely on the evaluation scores or the alleged stealing. Kay Jewelers indicated that store morale, in general, was one of several causes for the inadequate store sales. It was not, as put forth by Simpson, an alternate reason for the demotion. Thus, viewing these claims in the light most favorable to Simpson, the evidence does not tend to discredit Kay Jewelers' articulated reasons.

17

POLLAK, District Judge, concurring.

I join the judgment and opinion of the court.

I write separately merely to call attention to a legal question unresolved in this circuit that lurks unobtrusively in a footnote of the court's opinion. The question is whether this circuit's conventional summary of the elements of a prima facie ADEA case of discriminatory discharge or demotion is too narrowly stated insofar as it appears to contemplate that the plaintiff must establish that she has actually been replaced by a significantly younger person. Because appellant Simpson was in fact replaced by a significantly younger person, the question is of no moment in the present litigation, and there is, therefore, no present need for this court to resolve it. But the question is one that is likely to surface in some future ADEA case. So flagging the question now may serve to stimulate some useful thinking by those interested in this field of law.

In footnote 5 the court outlines the "three steps in the analysis of pretext discrimination cases" which must be pursued "[u]nder the McDonnell Douglas line of cases, as applied to the ADEA and the analogous provision of the PHRA." The footnote explains that the first of the three steps consists of "establish[ing] a prima facie case of discrimination," which a plaintiff accomplishes "by showing that she (1) is a member of the protected class, i.e. at least 40 years of age, 29 U.S.C. S631(a), (2) is qualified for the position, (3) suffered an adverse employment decision, and (4) in the case of a demotion or discharge, was replaced by a sufficiently younger person to create an inference of age discrimination." In support of this four-phase formulation of a prima facie ADEA discharge or demotion case footnote 5 cites Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 897 (3d Cir.), cert. dismissed, 483 U.S. 1052 (1987). The citation is an apposite one: in Chipollini, an ADEA discharge case, this court set forth essentially the same four-phase formulation.

Chipollini, in turn, derived the four-phase formulation from Maxfield v. Sinclair Intern., 766 F.2d 788, 793 (3d Cir. 1985), cert. denied, 474 U.S. 1057 (1986). In Maxfield this court adapted to ADEA discharge cases the Supreme

18

Court's four-phase formulation in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), of a prima facie Title VII case of racially discriminatory refusal to hire. Under McDonnell Douglas the plaintiff must, as an initial matter, establish: "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 411 U.S. at 802. The Maxfield discussion of the elements of a prima facie ADEA discharge case dealt with the question whether the fourth phase required a showing that the complainant had been replaced by a person younger than forty -- i.e., a person not within the statutorily protected class. This court rejected such a construction of the ADEA: "we hold that an ADEA plaintiff may establish the fourth element of the McDonnell Douglas test for a prima facie case by showing that s/he was replaced by a person sufficiently younger to permit an inference of age discrimination." 766 F.2d at 793.

What should be noted is that what this court was called on to decide in Maxfield was whether replacement by a significantly younger person within the protected class could be regarded as tending to establish a prima facie case of discharge contravening the ADEA, and this court's answer was in the affirmative. What the Maxfield court was not called on to decide -- or at least was not expressly called on to decide -- was whether replacement by someone significantly younger is an indispensable ingredient of a prima facie ADEA discharge case, or whether, in a circumstance in which the discharged plaintiff is not replaced, other evidence can support a prima facie case. In this connection it may be relevant that the Supreme Court in McDonnell Douglas did not require, as the fourth phase of a prima facie race-based-refusal-to-hire case, that the plaintiff establish the hiring of a non-minority person to fill the job for which the plaintiff was rejected; rather, the Court required the more limited showing that "the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 411 U.S. at 802.

19

The language from McDonnell Douglas which has just been quoted may signify that the Maxfield/Chipollini formulation has (inadvertently) been crafted in overly narrow terms. But that is not an obligatory inference. Race discrimination and age discrimination are sufficiently different phenomena so that the elements of Title VII's regulatory regime may not be automatically transferable in their entirety to the ADEA context. And in the ADEA context many cases seem to reflect an expectation that an ADEA discharge or demotion plaintiff will show replacement, either achieved or anticipated. As the Second Circuit put the matter in Haskell v. Kaman Corp., 714 F.2d 113, 119 n.1 (2d Cir. 1984): "Under the McDonnell Douglas formula as applied in ADEA cases a plaintiff may make out a prima facie case of age discrimination by showing that he belongs to the protected group (40 to 70 years of age), that he was sufficiently qualified to continue holding his position, that he was discharged, and that his position thereafter was held by someone younger than himself or held open for such a person." On the other hand, the Fifth Circuit has said, in Olitsky v. Spencer Gifts, 964 F.2d 1471, 1478 n.19 (5th Cir. 1992), cert. denied, 507 U.S. 909 (1993): "In McDonnell Douglas Corp. v. Green, 411 U.S. 799, 802. . . . the Supreme Court formulated an evidentiary procedure for race discrimination cases which has been adapted for ADEA cases. First the plaintiff must prove a prima facie case of age discrimination, which consists of evidence that the plaintiff: (1) was discharged; (2) was qualified for the position; (3) was within the protected class at the time of discharge; (4) was replaced by someone outside the protected class; or (5) by someone younger; or (6) show otherwise that his discharge was because of age." (The Fifth Circuit's Olitsky formulation has its origins in Elliot v. Group Medical & Surgical Service, 714 F.2d 556, 562 (5th Cir. 1983), cert. denied, 467 U.S. 1215 (1984), a Fifth Circuit case referred to by this court in Maxfield. See 766 F.2d at 792.).

Determining whether the Fifth Circuit is closer to the mark than the Second Circuit may be postponed for another day, since resolution of the question one way or another can have no bearing on the present appeal. As noted above, Ms. Simpson was in fact replaced by a

20

significantly younger person, and, accordingly, she was able to make out a prima facie case within the letter of Maxfield and Chipollini. The weakness of Ms. Simpson's case came at a later stage. As the opinion of the court makes plain, the magistrate judge and the district court correctly concluded that her case on the merits was too insubstantial to survive Kay Jeweler's motion for summary judgment.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

21