

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-7-2002

# Mahaven v. Pulaski Township

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-2176

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Mahaven v. Pulaski Township" (2002). *2002 Decisions.* Paper 332.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/332

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2176

_____

JACK MAHAVEN, Appellant

v.

PULASKI TOWNSHIP

_____

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civ. No. 99-cv-01795)
District Judge: Honorable Gary L. Lancaster

_____

Submitted Under Third Circuit LAR 34.1(a)
May 20, 2002
Before: BECKER, Chief Judge, GREENBERG, Circuit Judge,
and BARZILAY, Judge, U.S. Court of International Trade.

(Filed  June 6, 2002)

_____

OPINION

_____

BECKER, Chief Judge.

This is an appeal by plaintiff Jack Mahaven from the grant of summary judgment to defendant Pulaski Township in a case brought under the Age Discrimination in Employment Act, 29 U.S.C.   621 et seq. (ADEA).  Mahaven worked as a part-time police officer for the Township, located in Lawrence County, Pennsylvania, and was not promoted to Police Chief while a younger officer was.  The District Court assumed that Mahaven established a prima facie case under the ADEA, but concluded that Mahaven failed to undermine the legitimate grounds that the Township had put forth for promoting the other officer instead of Mahaven, and therefore concluded that the Township was entitled to summary judgment.  We will affirm.

I.

Mahaven, a Pennsylvania state trooper who retired after more than twenty years of service, began working in 1993 as a part-time patrolman for the Pulaski Police Department (the "PPD"), which consisted of several part-time patrolmen, one sergeant who was also part-time, and a full-time Police Chief.  The job of Police Chief largely involved administrative duties, such as setting officers' schedules, corresponding with state agencies, making sure that officers' qualifications remained up to date, and arranging for training for the police force, such as handgun training, and emergency medical training.  The Township was governed by a three-member Board of Supervisors, one of whom was assigned to be the liaison with the PPD.

In November 1996, then-Police Chief William Hogue took an unexpected leave of absence without pay.  At that time, Mahaven was the most senior part-time patrolman (in terms of number of years served).  Following Hogue's leave of absence, Mahaven and James Morris, another part-time patrolman, discussed who should handle the Chief's administrative duties during his absence.  According to Mahaven, he told Morris that it was a matter for the Board of Supervisors to take care of.

Thereafter, Morris began to take over the administrative responsibilities that Chief Hogue had previously performed.  Morris did not, however, work an increased number of

hours.  Morris told the supervisors that he had taken over Hogue's administrative duties while he was on leave.  According to Mahaven, he was not aware that Morris had taken over these duties.  Mahaven told one of the Supervisors that he did not think that it was necessary to hire another full-time Police Chief.  The Board of Supervisors promoted Morris to the rank of sergeant in 1997, but did not increase his pay or number of hours.  According to Morris, they did this largely because they needed to designate a contact person within the PPD.  In July 1998, the Board of Supervisors promoted Morris to the full-time position of Police Chief, and Mahaven's suit soon followed.

Pulaski Township offered five reasons for its decision to promote Morris to Police Chief instead of Mahaven: (1) Morris, a sergeant, was senior to plaintiff in rank; (2) Morris had voluntarily assumed the duties and responsibilities of Police Chief and was thus deemed the more ambitious candidate; (3) Morris was doing a good job as the de facto Police Chief; (4) Mahaven had never expressed an interest in the position; and (5) at least one of the three Pulaski Township Supervisors was aware of citizen complaints regarding plaintiff's performance as a patrolman.  The District Court found that on their face, these reasons are legitimate and non-discriminatory.  We agree.

When the employer has articulated a legitimate non-discriminatory reason for its action, the plaintiff, in order to survive summary judgment, must:

> point to some evidence, direct or circumstantial, from which a factfinder could either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Simpson v. Kay Jewelers, 142 F.3d 639, 644 (3d Cir. 1998) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).  In order to do this, the plaintiff must:

> point to weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the proffered nondiscriminatory reason did not actually motivate the employer's action.

Id. (internal citations, quotation marks, and alterations omitted).  We take up each of Mahaven's arguments concerning the Township's proffered reasons in turn.

II.

A.  Morris had voluntarily assumed the duties and responsibilities of Police Chief

The District Court concluded that "[i]t is undisputed . . . that at a point after Mr. Hogue's departure, another part-time officer, Jim Morris, voluntarily began to assume the responsibilities of police chief."  Mahaven now contends that he did put forth evidence to undermine this ground.  He points to: (1) a statement by Hogue that he had handled all administrative duties and forwarded them to Morris until December 31, 1997; (2) Mahaven's belief that the Supervisors, and not Morris, were handling the administrative duties that Hogue had formerly handled; (3) Morris's statement that his hours and pay did not increase when he took on the extra administrative duties; and (4) evidence that Mahaven worked overtime as a patrolman during the period after Hogue left the department and before Morris became Chief.

We do not think that any of the things that Mahaven points to significantly contradicts or undermines the stated ground that Morris voluntarily assumed the duties and responsibilities of Police Chief.  With respect to point (1), taking as true Hogue's statement that he continued to handle the administrative duties until December 31, 1997, that still leaves between six and seven months when Morris would have been handling the administrative duties by himself before he was promoted to Police Chief.  Regarding point (2), Mahaven's subjective and (according to the uncontradicted record) mistaken belief that the Supervisors and not Morris were handling the Police Chief's administrative duties does not undermine the Supervisors' claim that they hired Morris because he voluntarily assumed the responsibilities, especially when the fact that he voluntarily assumed the responsibilities is not disputed.

With respect to point (3), Mahaven seems to be suggesting that the administrative

work that Morris took on either, (a) was not very time-consuming, or (b) displaced a lot of his other work. Even if Morris did shift from doing more patrolling to doing more administrative work, this would still be a valid (non-age discriminatory) ground for choosing him to be Chief in that he rose to the occasion to handle the department's needs, even if he did not do so by increasing his total number of work hours.

B. Morris, a sergeant, was senior to plaintiff in rank

In response to the contention that Morris's sergeant rank was a valid ground for promoting Morris instead of Mahaven to the Police Chief position, Mahaven points to a portion of the Affirmative Action Plan that the Township adopted in 1990 that states: "[I]t shall be the policy of the Township that any person presently employed by the Township seeking to fill [a] vacant or newly created position shall possess the demonstrated ability to satisfy the requirements of the said position to be filled and shall be given no preference per se because of his/her present employment status with the township." (emphasis added). Mahaven also points to the deposition testimony of a Township employee for the proposition that "Pulaski township has always promoted by seniority in terms of time on the job." Evidently, Mahaven would like us to interpret the highlighted language from the quote above to refer to the level of the applicant's employment with the Township. Notably, this would mean that if the statement that "Pulaski township has always promoted by seniority" were true, then the Township would have been violating its own affirmative action policy through its use of seniority-based promotion. We think that the interpretation that Mahaven suggests is a strained reading of the affirmative action policy, however. Rather, we think it much more likely that it means the applicant "shall be given no preference per se because" he or she is presently employed by the Township. In any event, even assuming that Mahaven's reading is correct, it does not go far enough to undermine this ground.

With respect to Mahaven's second point, that "Pulaski township has always promoted by seniority," the testimony that he cites does not support his statement. The Township employee testified:

A. If I recall correctly, the policy said that when someone from a department retired, whether it was the road crew or road department or anyone else, you know, the next person would be given the opportunity to apply for the job.

Q. The next person in line of seniority?

A. Correct.

Q. . . . Was it a verbal or written policy?

A. It was a written policy. . . . Every Township employee had to sign it and it was placed in their personal file.

The testimony states that it was the Township's policy to give "the next person" in terms of seniority "the opportunity to apply for the job." It did not say that it was the Township's policy necessarily to promote people by seniority in terms of time on the job.

C. Morris, in the view of the Board of Supervisors, was doing a good job as the de facto Police Chief

This justification largely overlaps with the first ground. If the Board of Supervisors cited with approval Morris's initiative in taking over Hogue's administrative responsibilities, we assume that they thought he was doing a good job. Mahaven employs the same arguments to attempt to undermine this ground that he used to attack the first ground (i.e., that Morris voluntarily assumed Hogue's administrative responsibilities). For the same reasons as those stated above, we think that these arguments do not significantly undermine or contradict the ground.

D. Mahaven had never expressed an interest in the position

The District Court concluded that Mahaven did not dispute that he had never shown interest in the position of Police Chief. It is true that he never expressed an interest in the position, but it is also undisputed that the Board of Supervisors never publicized the position or made it known that they were planning to hire a new Police

Chief (in fact, there is some evidence that they were considering eliminating the position altogether).  Under the circumstances, we do not believe that the Board can legitimately point to the fact that Mahaven never expressed interest in the position as a ground for not promoting him.  Therefore, we acknowledge that the District Court erred by concluding that Mahaven failed to undermine this ground.

E.  At least one of the three Supervisors was aware of citizen complaints
        regarding plaintiff's performance as a patrolman

    Supervisor Dan Abramson received two different complaints from Township residents regarding Mahaven's conduct as a patrolman.  The first, filed on July 22, 1995, dealt with Mahaven's behavior at the scene of an accident.  The second, filed on August 17, 1996, complained about Mahaven's conduct during a traffic stop.  Abramson placed these complaints in Mahaven's personnel file and discussed them with Mahaven, but did not investigate them further or give Mahaven formal reprimands.  Mark Anderson, another Supervisor, received another oral complaint about Mahaven's behavior while Mahaven was working as a patrolman.  Mahaven challenges these complaints because they were not formally investigated and did not result in formal reprimands.  We agree that they were treated rather casually, but do not believe that we should therefore infer that they are pretextual.  Notably, Mahaven does not challenge the genuineness of the complaints (i.e., that they were actually filed).  He also acknowledges that they happened before Hogue even left the office of Police Chief.  Further, he does not point to any similar complaints made about Morris's conduct.  Therefore, he has failed to undermine this ground.

                                III.

    While Mahaven has scored a few points, at least two strong grounds remain: (1) that Morris voluntarily assumed the responsibilities of Police Chief and executed them well; and (2) that Mahaven had complaints in his personnel file while Morris did not.  Therefore, Mahaven has failed to "point to some evidence, direct or circumstantial, from which a factfinder could either (1) disbelieve the employer's articulated legitimate reasons," because some of the reasons remain intact.  Simpson v. Kay Jewelers, 142 F.3d 639, 644 (3d Cir. 1998) (emphasis added) (internal quotation marks and citation omitted).  Nor has he, by showing that some of the grounds that the Township cited are either repetitive or not all that solid, pointed to evidence that is enough to require a reasonable factfinder "to believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Id. (internal quotation marks and citation omitted).

    The judgment of the District Court will be affirmed.


                        BY THE COURT:

                            /s/ Edward R. Becker
                        Chief Judg