

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-12-2006

# Tunis v. Newark

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2467

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Tunis v. Newark" (2006). *2006 Decisions.* Paper 920.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/920

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-2467
_____

JAMES TUNIS; JOHN C. WITSCH

v.

CITY OF NEWARK

John C. Witsch, Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 01-cv-00517)
District Judge: The Honorable Jose L. Linares

_____

Submitted Under Third Circuit LAR 34.1(a)
June 8, 2006

Before: AMBRO, FUENTES, and NYGAARD, Circuit Judges.

(Filed : June 12, 2006)

_____

OPINION OF THE COURT
_____

NYGAARD, Circuit Judge.

# I.

Appellant, John Witsch, a former Captain in the Newark Police Department ("NPD"), announced his decision to retire from the force in 1999 at age 49 and after 27 years of service. Precipitating this decision was a disciplinary charge. At the disciplinary hearing, Chief Ambrose, the hearing officer, offered to dismiss the charge, but Witsch refused, opting to go through with the hearing. Witsch was found not guilty but retired allegedly because he felt threatened by remarks made two years earlier by Joseph Santiago, the NPD's Director, who was known for his frequent reorganizations of the force as well as his aggressive use of the disciplinary process which impacted all ranks and age groups. Santiago admitted that his approach was high-pressure and resulted in stress throughout the NPD. Preceding his retirement, Witsch had been regularly promoted both horizontally and laterally to positions of increasing responsibility. At the time of his retirement, he, along with several other Captains, was in charge of all of the operations of Newark's Command Operation Center when the Chief of Police was off duty. Witsch undeniably held a position of considerable stress in the already high-pressure NPD atmosphere that existed under Santiago. Upon retirement, Witsch began collecting a $62,000 yearly pension, available regardless of any alternative employment, and lifetime medical benefits.

Witsch filed a complaint alleging that he was constructively discharged on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., and the New Jersey Law Against Discrimination ("LAD"), N.J.S.A.

10:5-1 *et seq.* He complained, inter alia, that his forced retirement resulted in his missing the opportunity to become Deputy Chief, but he did not allege that the position had been filled by a younger officer having a lower score on the civil service tests.[1] Finding no disputed material facts, the District Court granted summary judgment in favor of Newark. The District Court found that while Witsch may have retired due to stressful conditions in the NPD, he failed to proffer any evidence of differential treatment based on his age. The District Court subsequently denied Witsch's three motions for reconsideration. This appeal followed. Because we conclude that Witsch has failed to overcome the shortcomings in his case on appeal, we will affirm the judgment of the District Court.

## II.

We conclude that there is no evidence that age discrimination resulted in Witsch's constructive discharge. Instead, the undisputed facts show only his dissatisfaction with conditions that impacted the entire NPD during the Santiago administration. Proof of age discrimination under both the ADEA and the LAD require Witsch to show that he was discriminated against and therefore injured based upon his age, a protected characteristic. Proof of constructive discharge under both the ADEA and the LAD requires him to show that the age discrimination made his working conditions so intolerable that he reasonably felt compelled to resign his position in the NPD. *See Konstantopoulos v. Westvaco Corp.*,

---

1.      Promotions in the NPD turn on an officer's rank on a civil service test. That rank is the product of state-created merit based selection criteria.

112 F.3d 710, 718 (3d Cir. 1997), *cert. denied*, 522 U.S. 1128 (1998). Witsch can show neither.

First, the only factual dispute he identifies is whether Santiago's administration and management of the NPD was effective and whether crime reduction statistics during his tenure were accurate. This dispute is wholly irrelevant to his age discrimination and constructive discharge case. *See Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 647 (3d Cir. 1998) (observing that discrimination laws are not to be employed to challenge the soundness of employers' business decisions).

Second, the record shows no evidence that Witsch suffered any adverse employment actions based on his age. In fact, the record reflects that Santiago promoted Witsch to a series of powerful positions with increasing amounts of responsibility throughout his tenure with the NPD. Instead of discriminating against Witsch, Santiago attempted to make Witsch's working conditions more palatable. For example, when Witsch was appointed to oversee all of the NPD's investigative operations, and eventually complained of the substantial stress associated with this position, Santiago transferred him to the Command Operations Center. At the Command Operations Center, Witsch was admittedly in a position of significant authority and power but could enjoy a less stressful working environment.

Third, Witsch's allegation that his compelled retirement caused him to forgo a Deputy Chief appointment focuses on the promotion of an officer older than himself, Captain John Esposito, to Acting Deputy Chief. Witsch concedes that no *younger* officer

4

who scored lower than he did on the civil service exams was ever promoted over him to this rank.  However, he alleges that, despite several openings, Santiago had permanently promoted only one Captain prior to Witsch's retirement and, shortly after his retirement, appointed Esposito to Acting Deputy Chief despite Esposito's lower position on the active civil service promotional list.  Age discrimination is not implicated simply because the NPD promoted the older Esposito over the younger Witsch, especially since Witsch had already retired.  *See Keller v. Orix Cred. Alliance*, *Inc.,* 130 F.3d 1101, 1108 (3d Cir. 1997) (*en banc*) (holding that to create an inference of age discrimination, plaintiff must show differential treatment of a sufficiently ***younger*** employee) (emphasis added). Discrimination laws are not to be used to attack the wisdom of managerial decisions.  *See Simpson*, 142 F.3d at 647.

Fourth, Witsch's complaint that disciplinary charges were unfairly lodged against him does not allege that he suffered more disciplinary charges than any other officer solely because of his age, nor does it show that the charges were based on manufactured evidence or that he was ever unfairly convicted of any charge.  Instead, the record reflects that Santiago's administration, much to the consternation of the rank-and-file,  was rife with the aggressive use of the disciplinary system against officers of every rank and age for those who committed even minor infractions and for those with tenuous relationships to minor and major investigations.  The disciplinary process was used zealously against the entire force, not just against Witsch, and when officers were involved in the process,

they had notice of the charges against them, a full and fair hearing and union representation.

Witsch also alleges that Santiago made discriminatory comments but failed to hear any ageist comments for the two years preceding his retirement and does not allege that any of the comments were directed toward him. These comments do not meet the considerably high burden required to prove constructive discharge. *See Shepherd v. Hunterdon Dev. Ctr.*, 803 A.2d 611 (2002) (observing that in applying the LAD, hostile work environment claim requires abusive, severe, pervasive and hostile conduct that objectively affects plaintiff's work environment, but a constructive discharge claim requires conduct so egregious and intolerable that plaintiff would feel forced to resign). Even under the less onerous burden required to prove hostile environment claims, courts have consistently recognized that offensive comments not directed at the plaintiff, even when they refer to protected characteristics, are insufficient to establish a claim.

Lastly, Witsch alleges that any reasonable officer in his position would have felt compelled to resign because of the disciplinary charge levied against him that precipitated his retirement. To bring a successful constructive discharge claim, Witsch must show that he reasonably believed he had no other option but to resign. *See Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 976 (3d Cir. 1998) (citing *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1083 (3d Cir. 1992) (observing that a stress-free employment environment is not ensured and "discrimination laws 'cannot be transformed into a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting'")). While the

6

law protects employees from concerted, calculated efforts to expel them or the imposition of unduly harsh conditions not visited upon their co-worker in order to force them to quit, it does not guarantee that they will not suffer frustrations, challenges, disappointments and discipline. *See Gray*, 957 F.3d at 1083. The record fails to show that Witsch was ever verbally threatened with dismissal, that evidence on which disciplinary charges were based was fabricated and that he was specifically targeted for discipline. His argument that he believed that the disciplinary charge was used to "get" him and he therefore feared termination in the future is unpersuasive. The law of constructive discharge is not concerned with subjective fears of possible future dismissal. *See Gray*, 957 F.2d 1082-83.

The record shows that instead of being forced to leave his position because of disciplinary charges, the officer presiding over Witsch's disciplinary hearing freely offered to dismiss them. Instead, Witsch insisted on proceeding with the hearing. At the close of the hearing, before which he was given notice and during which he was afforded due process and vigorous representation by union counsel, Witsch was absolved of guilt. As opposed to an environment where he was given no other choice but resignation, the record shows one in which Witsch and other officers accused of disciplinary infractions were awarded notice, a full and fair hearing and substantial union support[2].

―――――――――――――――――

2.      The police unions gave effective and substantial representation to NPD members during the Santiago administration, during which the disciplinary system was used aggressively. Union representation was provided at disciplinary hearings and when

(continued...)

7

Based on this record, no reasonable person in Witsch's position would feel that he had no other choice but to leave the NPD. To the contrary, after his hearing, and a long tenure in a high-ranking, high-pressure job in the stressful atmosphere of a big city police department, Witsch freely chose to end his law enforcement career.

## III.

Because the record reflects no evidence of either age discrimination or constructive discharge, the Order of the District Court granting summary judgment to Newark will be affirmed.

---

2.      (...continued)
challenging disciplinary actions in state courts and in front of the Public Employee Relations Commission.