**Maureen A. TUMOLO, Individually and as Executrix of the Estate of Michael D. Tumolo, Deceased**

v.

**TRIANGLE PACIFIC CORP.**

No. Civ.A. 98–4213.

United States District Court, E.D. Pennsylvania.

April 22, 1999.

411

Alan B. Epstein, Jablon, Epstein and Wolf, Philadelphia, PA, for Maureen A. Tumolo, as Executrix of the Estate of Michael D. Tumolo, deceased, plaintiff.

Andrew B. Clauss, Cozen and O'Connor, Philadelphia, PA, Frederick M. Thurman, Jr., Blair, Conaway, Bograd and Martin, Charlotte, NC, Edward Bograd, Blair, Conaway, Bograd & Martin, PA, Charlotte, NC, for Triangle Pacific Corporation, defendant.

## MEMORANDUM

LUDWIG, District Judge.

Defendant Triangle Pacific Corporation moves for summary judgment in this age discrimination and retaliation action. Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq.; Pennsylvania Human Relations Act (PHRA), 43 Pa.C.S.A. §§ 951 et seq.[1] Jurisdiction is federal question. 28 U.S.C. § 1331.

Plaintiff's decedent, Michael Tumolo, died on November 2, 1997. From 1984 to August 13, 1996, he had been employed as a sales representative in defendant's kitchen cabinet division, assigned to its King of Prussia office. As part of a reduction in force in defendant's Northeast region, two of the five sales representatives in the King of Prussia office were terminated— one of them, plaintiff's decedent, was age 59; the other, age 32. The three salespeople retained were ages 38, 43, and 48. Moynihan decl., ¶ 5. In October, 1996, Mr.

1. The same analysis applies to claims under ADEA and PHRA. *See Connors v. Chrysler Financial Corp.,* 160 F.3d 971, 972 (3d Cir. 1998).

Tumolo filed an age discrimination claim with the Equal Employment Opportunity Commission and the Pennsylvania Human Rights Commission. After his death, this lawsuit was filed on behalf of his estate.

The allegations underlying the discrimination claims are as follows: (1) plaintiff's decedent was harassed by his district manager, who was younger; (2) he was paid a lower commission rate than younger sales representatives; (3) he was discharged as a result of his age while younger employees were retained; and (4) he was retaliated against for his prior complaint of age discrimination.

■ *Hostile Work Environment Claim.*—Although the complaint alleges age-based harassment, compl. ¶¶ 25(a), 26(a), it is unclear whether it asserts a hostile work environment claim.[2] The elements of such a claim are as follows: (1) intentional discrimination because of age, which is (2) pervasive and regular, and which (3) has detrimental effects that (4) would be suffered by reasonable person of the same age in the same position; and (5) respondeat superior liability exists. *See Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1304 n. 19 (3d Cir.1997) (discussing hostile work environment claim in context of sex discrimination). The only matters proffered here are that Mr. Tumolo was subjected to "constant questions" about his expense reports, pl. resp. at 2, and was denied reimbursement for the cost of a fax machine while a younger employee was not. Pl. resp. at 2–3. These facts fall far short of making out a hostile work environment based on age.

■ *Unequal Pay.*—To succeed on a disparate pay claim, a plaintiff must show that younger employees were compensated at higher rates for substantially equivalent work. *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1087 (3d Cir.1996). Here, the sole evidence of unequal pay is that one younger sales representative received a higher commission rate than Mr. Tumolo.[3] *Cf. Simpson v. Kay Jewelers,* 142 F.3d 639, 646 (3d Cir.1998) (inference of discrimination based on a single member of a non-protected group not permitted). Mr. Tumolo received the highest base salary in his office, and his commission rate was increased to between 1.5% and 2.0% beginning in 1996.[4] Moreover, plaintiff has not shown that Mr. Tumolo's work assignment or performance was comparable to that of those receiving a higher commission rate or that his lower commission rate resulted in lower total compensation.

■ *Retaliation.*[5]—Plaintiff also claims that Mr. Tumolo was discharged in

---

2. Our Court of Appeals has not reached the question of whether a claim based on hostile work environment is available under ADEA. Nonetheless, at least three other circuits have recognized such claims. *Crawford v. Medina General Hosp.,* 96 F.3d 830, 834 (6th Cir. 1996); *Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104, 1108 (9th Cir.1991); *Young v. Will County Dept. of Pub. Aid,* 882 F.2d 290, 294 (7th Cir.1989). *See also Jackson v. R.I. Williams & Asso.,* 1998 WL 316090, *2 (E.D.Pa. June 8, 1998) (discussing hostile work environment claim under ADEA); *Sosky v. Inter'l Mill Serv., Inc.,* 1996 WL 32139, *9 (E.D.Pa. Jan. 25, 1996) (same).

3. Plaintiff argues that the Moynihan declaration, ¶ 10, as to commission rates of the five sales persons in the King of Prussia office is inadmissible hearsay and should not be considered. It appears likely that this evidence would be admissible as a business records exception, Fed.R.Evid. 803(6), or may be within Moynihan's personal knowledge. Regardless, it is unrefuted that Mr. Tumolo had the highest base salary in his office, and the extent to which his commission rate was lower than younger sales people and the effect on his total compensation have not been demonstrated.

4. Plaintiff's contention that Mr. Tumolo was entitled to an earlier increase is unpersuasive given no showing of disparate pay.

5. Retaliation for claims for age discrimination are governed by 29 U.S.C. § 623(d) ("It shall be unlawful for an employer to discriminate against any of his employees ... because such individual ... made a charge ... under this chapter."), and, its state counterpart, 43 Pa. C.S.A. § 955(d). To make out such a claim, a

retaliation for his letter to the president of the cabinet division, dated February 7, 1995, complaining that he was discriminated against because of his "experience and ... age." This claim must fail because there is no evidence of a causal link between the letter and Mr. Tumolo's termination in August 1996. *See Delli Santi v. CNA Ins. Co.*, 88 F.3d 192, 198 (3d Cir.1996) (prima facie requires showing (1) that plaintiff engaged in protected activity, (2) that he was subsequently subjected to an adverse employment action, and (3) a causal relationship between protected activity and the adverse action).

Defendant insists that Michael Moynihan, its primary employment decisionmaker in this case, had no knowledge of the letter. Moynihan decl., ¶ 7; Engle dep., at 31–32. Even assuming that he did, or that Bruce Yudis, a manager who admits he knew of the letter, played a role in the termination decision, adequate proof of causality is still lacking. That the termination occurred subsequent to Mr. Tumolo's complaint is not itself enough. *See Robinson*, 120 F.3d at 1302 ("[T]he mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events."). The timing here is unduly long and, therefore, irreparably weak on the issue of causation, inasmuch as decedent was discharged sixteen months after he wrote his letter complaint. *See Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir.1997) (affirming summary judgment for defendant on retaliation claim where evidence was that plaintiff was placed on worker's compensation leave

nineteen months after filing an EEOC charge).

Plaintiff's also offers as evidence of alleged retaliation a second letter from Mr. Tumolo to the defendant's president, dated May 10, 1995, in which Mr. Tumolo complained that one of his customers had not received products because of a problem with the credit department. Pl. resp., ex. J. Plaintiff says that this "maltreatment of Michael Tumolo's loyal customer" occurred three months after he wrote the February 1995 letter complaining of discrimination—and is, therefore, evidence of retaliatory state of mind. Pl. resp., at 26.

However, assuming the letter of May 10, 1995 is admissible,[6] it is hardly evidence of retaliation. All one may reasonably infer is that the credit department had difficulties handling an account. Plaintiff has not demonstrated that the situation was unique to Mr. Tumolo or his customers. There is no evidence as to the basis of the credit problem or whether it resulted in harm to Mr. Tumolo through a loss of business or reputation. Accordingly, this letter has not been shown to have any more than speculative connection to the first letter or any realistic relation to a theory of retaliation. No triable issue of retaliation has been presented.[7]

*Age–Based Discharge.*—At the heart of this case is the claim of discriminatory discharge. As the parties agree, because of the circumstantial nature of the evidence, the burden-shifting mechanism of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is applicable. *See also Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101,

---

plaintiff need not show that he filed formal administrative charges. Informal complaints to management may be sufficient. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir.1996); *Griffiths v. CIGNA Corp.*, 988 F.2d 457, 468 (3d Cir.1993).

**6.** Defendant objected to the admissibility of this letter because there is no accompanying affidavit as to its authentication or relevance.

**7.** Likewise, the denial of an expense request for a home fax machine in January 1996, eleven months after Mr. Tumolo wrote his complaining letter, is another stray piece of questionable and dated evidence. A younger employee who lived some distance from the office received approval for a fax machine. Whatever probative value this comparison may have is outweighed by offsetting factors. *See* Fed.R.Evid. 403.

1108 (3d Cir.1997) (applying *McDonnell Douglas* framework to ADEA cases). Consequently, plaintiff must establish a prima facie case of intentional discrimination by showing Mr. Tumolo (1) was over 40; (2) was qualified for the position in question; (3) was the subject of an adverse employment decision; and (4) since the termination was part of a reduction in force, other similarly-situated younger employees were retained. *See Torre v. Casio, Inc.,* 42 F.3d 825, 830, 831 (3d Cir.1994).[8]

Defendant argues that plaintiff has not shown a prima facie case as to Mr. Tumolo's qualifications for his sales position in that he was not generating new business. Def. mem. at 16. However, our Court of Appeals has held that plaintiff's evidentiary burden at this stage is modest: "[I]t is to demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent." *Marzano v. Computer Science Corp., Inc.,* 91 F.3d 497, 508 (3d Cir.1996). *See also Sempier v. Johnson & Higgins,* 45 F.3d 724, 729 (3d Cir.1995) ("[T]o deny the plaintiff an opportunity to move beyond the initial stage of establishing a prima facie case because he has failed to introduce evidence showing he possesses certain subjective qualities would improperly prevent the court from examining the criteria to determine whether their use was mere pretext.").

Here, the missing qualification—lack of new business—is more appropriately considered at the legitimate nondiscriminatory reason stage. *Cf. Jalil v. Avdel Corp.,* 873 F.2d 701, 706 (3d Cir.1989) (plaintiff need not disprove the asserted qualification, insubordination, to succeed in a prima facie case; it is more logically a defense raised at second stage of proof). Moreover, defendant has not presented evidence on which to find that Mr. Tumolo's alleged inaptitude was objectively or readily assessable. *See Waldron v. SL Industries, Inc.,* 56 F.3d 491, 499–500 (3d Cir.1995) (citing *Ezold v. Wolf, Block, Schorr and Solis–Cohen,* 983 F.2d 509 (3d Cir.1992)). He had been employed in his position for twelve years, since 1984, and, at the time of his termination, was the top-grossing salesperson in his King of Prussia office. To this extent, it is hard to say he was not prima facie qualified.

Once a prima facie case is made out, the burden shifts to defendant to produce evidence of a legitimate, nondiscriminatory reason for termination. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *Simpson,* 142 F.3d at 644 n. 5. Here, defendant has advanced inadequate job performance as the justification for discharging Mr. Tumolo during a company-wide reduction in workforce. He is alleged to have (1) mishandled several accounts, and (2) failed to develop new business. Engle dep., at 23, 29, 33–34; Mazzi dep., at 11–12, 17; Yudis dep., at 18–19; Moynihan decl., ¶ 6.[9]

8. According to plaintiff, Mr. Tumolo was "replaced" rather than terminated as a result of downsizing. Pl. resp. at 20–21. Whether or not it makes an analytical difference, this argument is unfounded. Beginning in the spring of 1996, it is undisputed that defendant began reducing its workforce, eventually terminating approximately 100 employees in its cabinet division. Moynihan decl., ¶ 3. The basis for the contention that Mr. Tumolo was replaced is that his accounts were reassigned to other, younger sales representatives. Yet, it necessarily follows that once he was terminated as a part of a reduction in force, his accounts—along with those of the other discharged employees—would be reassigned to employees who were retained.

9. Contrary to plaintiff's position, it is not necessarily inadmissible hearsay that Moynihan based his decision to terminate plaintiff's decedent in part on conversations Moynihan had with Mr. Tumolo's managers. Fed. R.Evid. 801–801. To the extent they are not offered for the truth of the matter asserted, the conversations may be received to show that Moynihan based his decision on performance rather than age. What is relevant is not whether the reports of those managers were true but whether Moynihan heard and considered them.

In order to survive summary judgment after defendant has set forth a nondiscriminatory reason, plaintiff need not invariably put on additional evidence of discrimination beyond the prima facie case. *See Sempier*, 45 F.3d at 731. Plaintiff must "point to some evidence, direct or circumstantial, for which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Simpson*, 142 F.3d at 644 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994).[10]

When reviewing a motion for summary judgment, the court "(i) resolve[s] conflicting evidence in favor of the nonmovant, (ii) [does] not engage in credibility determinations, and (iii) draw[s] all reasonable inferences in favor of the nonmovant." *Simpson*, 142 F.3d at 643, n. 3 (quoting *Fuentes*, 32 F.3d at 762 n. 1). Summary judgment is appropriate where the nonmovant has presented no evidence or inference that would give rise to a genuine issue of material fact. *See Schoonejongen v. Curtiss–Wright Corp.*, 143 F.3d 120, 130 (3d Cir.1998). It may not be granted where "there is disagreement over what inferences can be reasonably drawn from the facts even when the facts are undisputed." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir.

1996). *See also Coolspring Stone Supply, Inc. v. American States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir.1993) (summary judgment is inappropriate when the case turns on state of mind because "issues of knowledge and intent … must often be resolved on the basis of inferences drawn from the conduct of the parties.") (quoting *Riehl v. Travelers Ins. Co.*, 772 F.2d 19, 24 (3d Cir.1985).

■ Given this formidable standard, one should not substitute one's evaluation of the evidence for that of the factfinder even where, as here, the showing of pretext is not strong and is, perhaps, doubtful. There are some "weaknesses, implausibilities, incoherences, or contradictions" in defendant's explanation that at least permit a genuine argument that it may be pretextual. *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 331 (3d Cir.1995) (quoting *Fuentes*, 32 F.3d at 765). It is not the court's role to weigh the disputed evidence and decide which party has the stronger case. *See Brewer*, 72 F.3d at 331. Here, given Mr. Tumolo's outstanding sales record over a number of years and the challenges, such as they are, to defendant's justification of its decision, summary judgment on the age discrimination claim must be denied. *Cf. Torre*, 42 F.3d at 831–32 ("The inference of age discrimination may not be overpowering, but we cannot say that, as a matter of law, it is insufficient.").[11]

---

**10.** In order to prevail at trial, plaintiff must show by a preponderance of the evidence that age was a determinative, "but-for" cause of Mr. Tumolo's termination. *See Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 66 and n. 4 (3d Cir.1996); *Gomez v. Allegheny Health Serv., Inc.*, 71 F.3d 1079, 1084 (3d Cir.1995); *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994).

**11.** It is correct that an employer is entitled to construct its own performance evaluation standards, and Mr. Tumolo appears not to have met them in this case—albeit, now deceased, he is unable to testify to the contrary. *See Simpson v. Kay Jewelers*, 142 F.3d 639, 647 (3d Cir.1998); *Ezold v. Wolf, Block, Schorr and Solis–Cohen*, 983 F.2d 509, 528 (3d Cir.1992). However, one person's view of

such a standard may be another's view of discrimination. Not generating new business may be a serious deficit in a particular business setting, but it is also often associated with the travails of age. *Cf. Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993) ("It is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age."). Defendant, quite properly, may have down-graded Mr. Tumolo's performance. But to limit the assessment primarily to lack of "new business" would seem to make it vulnerable on its face to a claim of pretext. How does defendant account for Mr. Tumolo's sales achievements?

■ *Punitive Damages.*—As a matter of law, plaintiff is not entitled to recover punitive damages—as distinct from liquidated damages—under the ADEA, *see Smith v. Berry Co.,* 165 F.3d 390, 395 (5th Cir.1999), *Williams v. Valentec Kisco, Inc.,* 964 F.2d 723, 729 (8th Cir.1992), *Bruno v. Western Elec. Co.,* 829 F.2d 957, 967 (10th Cir.1987), *Hatter v. New York City Housing Auth.,* 1998 WL 743733, *2 (2d Cir. Oct. 22, 1998) (unpublished opinion), *Alston v. Atlantic Elec. Co.,* 962 F.Supp. 616, 625 n. 11 (D.N.J.1997), *Burland v. Manor-Care Health Serv., Inc.,* 1999 WL 58580, *4 (E.D.Pa. Jan. 26, 1999); or under PHRA. *See Burland,* 1999 WL 58580, *4 (citing *Hoy v. Angelone,* 554 Pa. 134, 720 A.2d 745, 749 (1998).

In conclusion, summary judgment is denied as to plaintiff's claim of age-based discharge and is granted as to all other claims.

### ORDER

AND NOW, this 21st day of April, 1999, defendant Triangle Pacific Corporation's motion for summary judgment, Fed. R.Civ.P. 56, is ruled on as follows:

1) Hostile work environment—granted;

2) Disparate pay—granted;

3) Retaliation—granted;

4) Age-based termination—denied.

5) Punitive damages—granted.

A memorandum will be filed.