**Joanne M. TOOMEY,**

v.

**APPLE PRESS, LTD. and Gary Gehman.**

**No. CIV.A. 00–1890.**

United States District Court, E.D. Pennsylvania.

March 19, 2001.

---

Nancy O'Mara Ezold, Bala Cynwyd, PA, for plaintiff.

Randall C. Schauer, Thane C.J. Trotman, Mac Elree, Harvey, Gallagher & Featherman, Ltd., West Chester, PA, for defendants.

## MEMORANDUM

LUDWIG, District Judge.

This is an employment discrimination action invoking Title VII, 42 U.S.C. § 2000e, *et seq.*, the Pennsylvania Human Relations Act, 43 Pa.S.A. § 951, *et seq.*, the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* Defendants Apple Press, Ltd.[1] and Gary Gehman move for summary judgment. Fed.R.Civ.P. 56.[2] Jurisdiction is federal question and supplemental. 28 U.S.C. §§ 1331, 1367. The motion will be denied.[3]

### I. Background

On February 13, 1989, Apple Press employed plaintiff Joanne Toomey, now age 54, as a customer service representative. Amended cmplt. ¶ 8. She was hired by defendant Gary Gehman, who had founded the company in 1975, and who continues to be its owner and president.[4] Plaintiff had no prior experience in the print industry.[5] Toomey dep. at 24, 29–30. Gehman, who was then married to plaintiff's sister, "knew [plaintiff] worked for other employ-

ers. She was always a very diligent and loyal employee to them." Gehman dep. at 76.

In October, 1990, Gehman began divorce proceedings and found himself unable to perform some of his duties at Apple. Gehman dep. at 74. Later that month, he promoted plaintiff to supervisor of scheduling for the pressroom,[6] which increased her responsibilities significantly. Toomey dep. at 102–03; Gehman dep. at 74–75; Muehlbach dep. at 14. In particular, she reviewed deadlines, created and coordinated production and delivery schedules, checked compliance and performed quality control, monitored equipment maintenance, and hired and trained customer service representatives. Gehman dep. at 85–89.

In the spring of 1992, after his divorce, Gehman resumed his position as Apple's CEO. Toomey dep. at 103. Plaintiff continued as supervisor until December, 1992, when she took a leave of absence for treatment of breast cancer. *Id.* at 113. About that time, important changes occurred in the graphic arts industry—high-tech pre-press computers and faster delivery dates

1. Apple Press is a Pennsylvania corporation with its principal place of business located in Exton, Pa. Amended cmplt. ¶ 2.

2. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The movant must show that there is no triable issue of fact. The non-movant having the burden of proof at trial must point to affirmative evidence in the record—and not simply rely on allegations or denials in the pleadings—in order to defeat a properly supported motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Crissman v. Dover Downs Entertainment, Inc.*, 239 F.3d 357, 360–61 (3d Cir.2001).

The standards for determination of the motion are: 1) resolve evidentiary conflicts in favor of the non-movant; 2) do not evaluate

credibility; and 3) draw all reasonable inferences in the non-movant's favor. *See Bray v. Marriott Hotels*, 110 F.3d 986, 989 (3d Cir. 1997).

3. On July 27, 2000, defendants' motion to dismiss based on laches was denied.

4. According to Gehman, over the past five years, Apple has employed between 17 and 20 employees. Gehman aff. ¶ 4.

5. Prior to working at Apple, plaintiff was a medical claims analyst, processing insurance claims and issuing benefit checks to physicians and hospitals. She had also owned a photography studio and had been a pharmacist's assistant. Toomey dep. at 7–8, 31–32.

6. Apple's employees other than Gehman and sales representatives were not given job titles. Toomey dep. at 14.

resulted in speed, efficiency, and lower prices. Toomey dep. at 199; Ache aff. ¶¶ 5, 6. Apple's main business, producing letters and flyers, decreased, and Gehman turned to multi-colored printing projects. Ache aff. ¶ 4; Gehman aff. ¶ 7. To that end, in August 1993, he hired Pamela Larkin as "Production Estimator." Larkin aff. ¶ 2. Larkin updated the company through computerization and trained employees in the new system. Ache aff. ¶ 7.

A month later, in September, 1993, plaintiff returned to work on a full-time basis. Toomey dep. at 23. After he decided that she was unable to perform some of her prior responsibilities, such as press scheduling, Gehman assigned her to the shipping area. Gehman dep. at 18; Gehman aff. ¶ 16. By early 1994, her job was relegated to the moving of bindery from the pressroom to an area near the delivery docks.[7] Toomey dep. at 11–12. In March, 1994, Apple hired Kevin Klabunde, then age 36, who had a number of years of experience in the print industry. Klabunde aff. ¶ 4. Although he was hired to replace Larkin as an estimator, within weeks he began to take over scheduling and supervising the pressroom.[8] Larkin dep. at 106; Klabunde aff. ¶¶ 1, 9.

On March 11, 1994, Gehman terminated plaintiff, and purportedly stated that Apple was "going high-tech." Amended cmplt. ¶ 17.

## II. Discussion

### A. Discriminatory discharge

Plaintiff's claims for wrongful termination under Title VII, the PHRA, ADEA, and ADA are based on theories of both mixed-motive and pretext. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–46, 109 S.Ct. 1775, 1786–88, 104 L.Ed.2d 268 (1989) (mixed-motive cases require direct evidence); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973) (pretext cases involve circumstantial evidence). These two distinct frameworks, developed in the context of Title VII actions, have also been applied to PHRA, ADA and ADEA claims. *See Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.,* 60 F.3d 153, 157 (3d Cir.1995) ("[T]he ADA, ADEA and Title VII all serve the same purpose—to prohibit discrimination in employment against members of certain classes. Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well.").

Plaintiff's pretext claims may be analyzed using the tripartite burden-shifting formula set forth in *McDonnell Douglas.*[9] In summary, plaintiff must first establish a

---

7. Plaintiff testified:

    Q: What were you doing as of March 10 of 1994, the day before you were terminated at Apple Press?
    A: I was in the bindery.
    Q: What did you do in the bindery?
    A: I had moved the bindery from one side of the building to the other and had been working on that project. It would be more feasible to have the bindery next to the loading dock than on the other side of the building. So I was working on that to expedite business and business flow.
    Q: Any other job responsibilities you had as of March 10 of 1994?

    A: They were taken away from me.
    Toomey dep. at 11–12.

8. According to plaintiff, a few days after Klabunde was hired, he took over her responsibilities, and she was instructed to report to him. Toomey dep. at 12. However, Klabunde stated that he did not begin scheduling until plaintiff was fired. Klabunde aff. ¶ 9.

9. Because plaintiff has presented sufficient evidence to survive summary judgment on a pretext theory, a mixed-motive analysis is unnecessary. *See Weldon v. Kraft, Inc.,* 896 F.2d 793, 800 n. 4 (3d Cir.1990).

prima facie case of discrimination. If successful, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the employment decision. Once that occurs, plaintiff has "an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Jones v. School Dist. of Philadelphia,* 198 F.3d 403, 410 (3d Cir.1999) (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (citations omitted)). "While the burden of production may shift, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.*

■ 1. Prima facie case.—A prima facie case consists of four elements: 1) plaintiff is a member of a protected class; 2) was qualified for the position; 3) was affected by an employment decision; and 4) under such circumstances that there is an inference of unlawful discrimination, as where a similarly-situated person, not of the protected class, is treated differently. *See McDonnell Douglas,* 411 U.S. at 802 & n. 13, 93 S.Ct. at 1824 & n. 13; *Shaner v. Synthes,* 204 F.3d 494, 500 (3d Cir.2000) (ADA);[10] *Jones,* 198 F.3d at 411 (Title VII); *Sempier v. Johnson & Higgins,* 45 F.3d 724, 728 (3d Cir.1995) (ADEA). The prima facie case is not intended to be rigidly applied or difficult to prove. *Equal Employment Opportunity Comm'n v. Metal Serv. Co.,* 892 F.2d 341, 347 (3d Cir. 1990); *see also Pivirotto v. Innovative Sys., Inc.,* 191 F.3d 344, 352 (3rd Cir.1999)

(the prima facie case "is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination"). Defendants maintain that plaintiff does not meet the second and fourth elements.

To determine the employee's qualifications for the position, an objective standard is used. *See Sempier,* 45 F.3d at 729. Defendants contest plaintiff's ability "to keep up with the demands of Apple Press' changing technology and business practices." Defs. mem. at 14. They proffer opinions of some of her co-workers to the effect that she lacked technical knowledge and was ineffective when she returned from the 1993 leave of absence. *See, e.g.,* Ache aff. ¶ 8; Ache supp. aff. ¶ 9; Smith aff. ¶ 1; Knepp aff. ¶ 4; Klabunde dep. at 18–20; Klabunde aff. ¶ 6. Plaintiff counters with contrary statements from other co-employees. Larkin dep. at 105; Muehlbach dep. at 27.

At this procedural stage, plaintiff's "modest" evidentiary burden on qualification is met. *Tumolo v. Triangle Pacific Corp.,* 46 F.Supp.2d 410, 414 (E.D.Pa.1999) (citing *Marzano v. Computer Science Corp., Inc.,* 91 F.3d 497, 508 (3d Cir.1996)). As to employee performance, Apple did not have a formalized system of review, or a handbook delineating requisite conduct. Gehman aff. ¶ 4. Our Court of Appeals recently stated that "subjective scoring" may be based on factors (*i.e.*—lack of special knowledge or skills) that are too speculative for a meaningful comparison, and such a consideration is better left to the pretext analysis. *Goosby v. Johnson &*

---

10. The prima facie case of discrimination under the ADA requires a plaintiff to submit evidence that: 1) he or she has a "disability" within the meaning of the ADA; 2) was qualified for the position, with or without accommodation; and 3) was subjected to an adverse employment decision as a result of discrimi-

nation. *Shaner v. Synthes,* 204 F.3d 494, 500 (3d Cir.2000).

Defendants do not dispute that plaintiff satisfies the first element of the prima facie case under Title VII and the PHRA—a woman; the ADA—a history of breast cancer; or the ADEA—over 40. Defs. mem. at 10 n. 6.

*Johnson Medical, Inc.,* 228 F.3d 313, 320–21 (3d Cir.2000) (citation omitted). Moreover, considering plaintiff's various roles at Apple over a five-year period, especially those during Gehman's absence, it may be unrealistic or implausible to say that she was not objectively qualified.

Defendants also assert that plaintiff has not shown she was "replaced by a person outside the protected class to create an inference of discrimination."[11] Defs. mem. at 9–10. According to plaintiff, she was treated less favorably than Kevin Klabunde, "a younger male without a history of cancer or a perceived disability." Pltf. mem. at 27. Although proof of differential treatment of "a single member of the non-protected class is insufficient to give rise to an inference of discrimination" at the pretext stage, "such an inference may be acceptable at the prima facie stage of the analysis." *Simpson v. Kay Jewelers,* 142 F.3d 639, 646 (3d Cir.1998).

■ It is undisputed that in March 1994, Apple hired Klabunde, 11 years plaintiff's junior, and she was terminated less than two weeks later. Defendants maintain that she was not "replaced" by Klabunde because she had been removed from her supervisory responsibilities prior to his hiring. Nevertheless, "in order to determine if Plaintiff has developed sufficient evidence to allege a prima facie case of ... discrimination, a court should look at the Plaintiff's entire work history, and not just the limited circumstances involving her termination." *Chisholm v. Nat'l Corp. for Housing Partnerships,* No. CIV. A. 99–3602,2001 WL 115406, at *2 (E.D.Pa. Feb.1, 2001). Given the downgrade of

plaintiff's responsibilities following her return from cancer treatment, the subsequent hiring of a younger male employee and her firing soon thereafter, it cannot be said that an inference of discrimination is out of the question. *See Sempier,* 45 F.3d at 729–30 & n. 5 (fourth prong satisfied in ADEA case where, as part of the process that led to plaintiff's discharge, his functions were incrementally transferred to someone over 10 years younger). Plaintiff has presented enough information to construct a prima facie case.

2. **Defendants' legitimate non-discriminatory reason.**—Defendants' position is that plaintiff was terminated because of her negative attitude and lack of qualifications, and that her position was eliminated because she no longer served a useful employment purpose. Plaintiff does not contest that defendants have articulated a non-discriminatory explanation for her termination. Pltf. mem. at 29.

■ 3. **Pretext.**—At this stage of the case, plaintiff may defeat defendants' motion by pointing to some evidence, direct or circumstantial, from which a fact-finder could reasonably either: 1) disbelieve the employer's articulated legitimate non-discriminatory reason; or 2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *Jones,* 198 F.3d at 413 (citations omitted). Considering that credibility determinations are for the fact-finder and conflicting evidence must be viewed in plaintiff's favor, there is sufficient evidence from which it could be concluded at trial that either gender, dis-

---

**11.** As set forth in *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 312, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996), and refined in *Pivirotto v. Innovative Systems Inc.,* 191 F.3d 344, 353–54 (3d Cir.1999), a plaintiff need not show, as part of a prima

facie case, that she was replaced by someone outside of the relevant class. Instead, a plaintiff only need offer some evidence "adequate to create an inference" of unlawful discrimination. *Id.* at 355.

ability, or age animus, separately or in combination, led to plaintiff's termination.

As to the disability claim, plaintiff argues that Gehman treated her differently after her leave of absence and that he discussed her medical condition with other employees and at least one customer. Toomey dep. at 116. Her contention is corroborated by former co-workers. According to a pre-press technician at Apple from 1987 to 1994, Gehman would complain that plaintiff had changed following her bout with cancer and he did not know what to do about it. Brunges aff. ¶ 3. Another employee reported Gehman to have said that plaintiff's medical appointments disrupted business. Larkin aff. ¶¶ 4, 5. Another stated that, prior to plaintiff's return, Gehman expressed concern that the chemotherapy "would damage her brain cells and she wouldn't be able to perform her job." [12] Muehlbach dep. at 26. This evidence expands plaintiff's claim beyond "simple accusations and speculation.... [Instead,] there is sufficient evidence ... to put [the employer's] motivation in issue." *Pollock v. American Tel. & Tel. Long Lines,* 794 F.2d 860, 865 (3d Cir.1986).

In one light, defendants' articulated reasons for termination could also be regarded as a pretext for gender discrimination. Plaintiff offers affidavits and deposition testimony of former co-workers, stating that Gehman frequently described women in terms of sexual attributes, criticized their intelligence, mocked voice and speech patterns, and used gender-abusive language. Larkin aff. ¶ 6; Brunges aff. ¶ 4;

Muehlbach dep. at 16–20; Larkin dep. at 101–102; Ache dep. at 64–65. One co-worker stated that Gehman would "rant" about women so regularly that "it never struck [her] as odd." [13] Ache dep. at 49–52. This evidence of sexism is "probative of 'whether one of the principal nondiscriminatory reasons asserted by [Apple] for its actions was in a fact a pretext for ... discrimination.'" *Hurley v. Atlantic City Police Dep't,* 174 F.3d 95, 110 (3d Cir.1999) (quoting *Glass v. Philadelphia Elec. Co.,* 34 F.3d 188, 194 (3d Cir.1994); *see also EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 897–98 (9th Cir.1994) (evidence of employer's sexual harassment of female employees other than plaintiff and evidence of disparaging remarks about women in general were relevant to motive).

As for age discrimination, Gehman's previous treatment of other older employees may be probative of whether he harbored a discriminatory attitude against plaintiff. *See Abrams v. Lightolier, Inc.,* 50 F.3d 1204, 1214 (3d Cir.1995). Plaintiff tendered affidavits of two employees who recalled overhearing Gehman remark about another employee, "I can't wait until that f* * *ing granny retires[.]" Brunges aff. ¶ 8; Larkin aff. ¶ 9; *see Torre v. Casio, Inc.,* 42 F.3d 825, 834 (3d Cir.1994) (age-biased comments by supervisor could lead to inference that termination decision was made because of plaintiff's age). She also submitted an EEOC determination that age was a motivating factor in another employee's termination from Apple in 1993.[14] Pltfs. mem. exh. 13; *see Glass,* 34

---

**12.** According to this employee, he was terminated by Apple two months after Gehman learned that his wife had brain cancer. Muehlbach dep. at 22.

**13.** That Gehman would also talk about "Puerto Ricans and Mexicans and Jews and blacks and whites and women and Catholics" may or may not be relevant to this inquiry, de-

pending on context and timing. Ache dep. at 49.

**14.** The admission of an EEOC determination is a matter of discretion for the trial court. *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1099 n. 12 (3d Cir.1995).

F.3d at 194–95 (evidence of prior harassment was relevant to whether plaintiff was terminated because of discrimination).

Contrary to defendants' contention, plaintiff has not "simply relied on conjecture, innuendo, and her own uninformed opinion that she was terminated because of her age, gender and/or disability." Defs. mem. at 19. There is sufficient evidence from which a fact-finder could reasonably conclude that Gehman's decision was motivated by gender, age or disability discrimination. Plaintiff having the ultimate burden of proof at trial, the issues must be referred to a jury.

B.  Hostile work environment [15]

██  "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The elements of such a claim are as follows: "(1) the employee[ ] suffered intentional discrimination because of [her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability." *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir.1999) (quoting *Andrews v. City of Phil-*

*adelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990)). These factors include both a subjective standard (no. 3) and an objective standard (no. 4). *Andrews*, 895 F.2d at 1482. To determine whether a hostile environment exists, all relevant circumstances should be evaluated—including the severity of the conduct, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23, 114 S.Ct. at 371.

██  Plaintiff offered sufficient evidence to create triable issues as to the first two elements. *See Andrews*, 895 F.2d at 1484–85 ("The pervasive use of derogatory and insulting terms relating to women generally and addressed to female employees personally may serve as evidence of a hostile environment."); *see also Hurley*, 174 F.3d at 110 (3d Cir.1999) ("a plaintiff may show that, while she was not personally subjected to harassing conduct, her working conditions were nevertheless altered as a result of witnessing a defendant's hostility towards other women at the workplace"). According to plaintiff, Gehman frequently ranted about women and also had fits of anger—screaming, yelling, and throwing objects in his office.[16] Larkin dep. at 23–24; Toomey aff. ¶ 1. Although defendants discount his angry outbursts as not directed at anyone in particular, *e.g.*, Klabunde dep. at 42 ("He would throw things, but not at people."), factual disputes exist as to

---

15. Plaintiff bases her hostile work environment claim on sexual harassment.

16. Plaintiff's affidavit:
[Gehman's] office was in the front part of the Apple Press building in the office area where almost all of the female employees worked. His derogatory anti-female and sexual comments in the office were often combined with intimidating conduct including screaming, yelling and throwing things which was so fierce that it some-

times cause me and other women to retreat into our offices until it stopped. On numerous occasions throughout my employment with Apple Press, Gary Gehman's sexual and derisive anti-female language was also accompanied by his touching and rubbing himself in his private parts in front of me and other women employees and commenting that "it felt good."
Toomey aff. ¶ 1.

whether his intimidating behavior was motivated by discrimination. *See Spain v. Gallegos,* 26 F.3d 439, 447 (3d Cir.1994) ("an employee can demonstrate that there is a sexually hostile work environment without proving blatant sexual misconduct ... the intent to discriminate on the basis of sex could be demonstrated through actions which 'are not sexual by their very nature'") (quoting *Andrews,* 895 F.2d at 1482 n. 3).

As to the third factor, defendants challenge whether plaintiff can show that the discrimination detrimentally affected her. According to defendants, "Apple Press may not have been the most ideal environment for any person to work in, [however, plaintiff] was a willing and ready participant in the exchange of sexually-oriented and adult jokes and material throughout the course of her employment." Defs. mem. at 21. While this appears to be true,[17] plaintiff's version of the evidence is that Apple employees were constantly subject to Gehman's sexual epithets and plaintiff felt physically intimidated by his behavior. Although she complained "from time to time about his sexual and demeaning comments and his sexual conduct ... he did not stop." Toomey aff. ¶ 2. While perhaps this issue is a close call, after inferences are drawn in plaintiff's favor, there is a factual question whether Gehman's conduct, if proved, so impacted her as to have altered the terms of her employment. *See Troendle v. Yellow Freight, Inc.,* No. CIV. A. 97–CV–2430,1999 WL 89747, at *5 (E.D.Pa.1999) (although facts suggested that plaintiff herself was an ac-

tive participant in vulgar working environment, dispute remained as to whether her participation reached the level of obscenity about which she complained).

Moreover, given the alleged regularity of the crude and demeaning language, a jury could find that a reasonable person in plaintiff's position would have been affected detrimentally by the company's work environment. Therefore, her claim withstands summary judgment as to the objective or fourth factor.[18] In these circumstances, because triable issues exist as to her claim of sexual harassment, this aspect of defendants' motion must also be rejected and the motion denied.

An appropriate order follows.

### *ORDER*

AND NOW, this _____ day of March, 2001, the motion of defendants Apple Press, Ltd. and Gary Gehman for summary judgment is denied, there being triable issues as to Title VII, PHRA, ADA, and ADEA violations.

---

**17.** For example, plaintiff admits giving Gehman a sexual "gag gift" as a birthday present in the presence of other Apple employees. Toomey dep. at 77–78; Ache dep. at 62–63. Also, according to her former co-worker, she regularly circulated "unsavory visible jokes," and made references to Gehman's sexual anatomy. Ache dep. at 19–32. Other co-workers also heard plaintiff use sexually descriptive words, Brunges. aff. 42–44, and make derogatory, sexual references about female customers and employees. Martin dep. 23–24.

**18.** Defendants do not dispute the existence of respondeat superior liability.