Andrew J. MALLICK, Eugene Sadavage, John P. Jeffers, Thomas Sivahop, Joseph A. Waxmonsky, John C. Piontkowski, Robert S. Krasucki, Stanley Slavinski, Paul Lucas, and Gerald L. Powell, Individually and on behalf of all others similarly situated, Appellants

v.

PENNSYLVANIA STATE POLICE.

Commonwealth Court of Pennsylvania.

Argued Nov. 1, 2004.

Decided Dec. 6, 2004.

Peter G. Loftus, Waverly, for appellant.

Gwendolyn T. Mosley, Harrisburg, for appellee.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION By Judge COHN JUBELIRER.

Appellants, retired State Police troopers, appeal an order of the Court of Common Pleas of Lackawanna County, which, after a non-jury trial, ruled in favor of the Pennsylvania State Police (PSP), concluding that it did not commit age discrimination against Appellants under the Pennsylvania Human Relations Act (PHRA).[1]

Appellants assert on appeal that the trial court erred: (1) in holding that Appellants did not sustain their burden of demonstrating age discrimination; (2) in ruling that Appellants must show that younger employees were compensated at higher rates for substantially equivalent work; and (3) in stating that Appellants did not demonstrate a "past practice."

Appellants, all over the age of 40,[2] were employees of the PSP as far back as January 1, 1992, and members of PSP Troop S, located in Dunmore, Pennsylvania. During their employment, the PSP frequently requested and/or ordered the Appellants to work in excess of their normal forty—hour (40) workweek and to work weekends, holidays or inconvenient shifts. This overtime work entitled them to a shift differential. Overtime assignments, moreover, presented Appellants with opportunities to increase their base straight—time income. The actual pay employees receive in the year preceding their retirement, including Sundays, holidays and overtime, determines the calculation of their retirement and pension benefits. Thus, overtime assignments made during the year preceding retirement can significantly increase a trooper's retirement benefits.

Beginning in 1992, the Commonwealth's Department of Transportation commenced a four—year construction project on a section of Interstate 81, which is located in Dunmore and within the geographical boundaries of PSP Troop S. (O.R. File Folder # 1, Tr., 4/16/02 at 10–12.) Troop S troopers were assigned overtime work to patrol the construction area. (O.R. File Folder # 2, Tr., 4/17/02 at 11.) In most troops, overtime was usually offered to troopers in descending order of seniority. (O.R. File Folder # 2, Tr., 4/17/02 at 12.)

In 1995, the Commissioner, and others in the PSP, became concerned that the substantial overtime Troop S troopers were working in the construction area created safety concerns for both the troopers and the public. Moreover, it seemed that troopers about to retire were using overtime assignments to "pad" their pensions. (O.R. File Folder # 2, Tr., 4/18/02 at 5–7.) Based on those concerns, the Commissioner decided to divide the overtime work for the construction area between Troop S and Troop R, on a 50—50 basis. In addition, the PSP issued this directive:

> Members eligible for retirement at 20 to 25 years of service (which may include military service) shall not be favored for assignment to overtime, premium holidays, or specifically funded volunteer programs, nor shall they be favored for preferential assignment where shift differential is a factor. Troop Command-

1. Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§ 951–963.

2. The Complaint initially named Stanley Slavinski as a tenth plaintiff; however, Mr. Slavinski died before the case was tried and his counsel took no action to substitute his estate or other legal representative.

ers and Bureau Directors shall institute measures to assure overtime is assigned on an *equitable* basis.

(O.R. File Folder # 2, App. Ex. 26, p. 2) (emphasis in original).

The terms of Appellants' employment, including rights to pension benefits, are governed by a Collective Bargaining Agreement (CBA) between their union, the Pennsylvania State Troopers Association, and the Commonwealth of Pennsylvania. (O.R. File Folder # 2, Tr., 4/17/02 at 108–109.) Pursuant to Article 25 of the CBA, members who retire after twenty years of service are entitled to receive 50% of their highest year's salary and those who retire after twenty-five years of service are entitled to receive 75% of their highest year's salary. (O.R. File Folder # 2, Tr., 4/16/02 at 6.) Upon retirement, Appellants received 75% of their highest year's salary.

Appellants brought suit in common pleas court,[3] alleging age discrimination under the PHRA. Appellants testified regarding the overtime they worked, their belief that they were entitled to work as much overtime as they wanted, and estimates as to the amount of overtime and pay they could have received. The PSP presented testimony regarding both PSP overtime policies and pay records showing that the overtime pay Appellants received in the year preceding their retirement exceeded the pay received by younger troopers.

The trial court concluded that Appellants did not establish the existence of a past practice of assigning overtime to troopers in their last year before retirement. This conclusion was based on its finding of conflicting testimony regarding a preference for overtime for retiring troopers, and that, at best, any arguable preference ended after resolution of the 1991 Camp Hill riots. (Tr. Ct. Op. at 8–9, FOF ¶¶ 1, 2, 5.) The court also noted that the Commissioner's 1995 directive mandating equitable distribution of overtime and the CBA, which was effective from 1995–1998, was silent on the issue of overtime distribution. (Tr. Ct. Op. at 9, FOF ¶¶ 6, 7.) The trial court concluded that there was no evidence that Appellants received less overtime compensation than younger troopers did, and, therefore, they could not succeed on a disparate pay claim based upon age. (Tr. Ct. Op. at 9–10, COL ¶¶ 1–4.) Finally, the trial court held that the policy of not favoring retiring troopers with overtime, with its "focus upon their status as 'retiring troopers,'" was lawful because there is a distinction between age and years of service. (Tr. Ct. Op. at 10–11, COL ¶¶ 6, 7.)

Appellants appeal the trial court's order to this Court.[4] On appeal, Appellants first argue that they sustained their burden of demonstrating age discrimination under the PHRA. Specifically, Appellants claim that because each was over 40 years of age, their age was the basis for being denied the overtime. Appellants' brief to this Court summarizes the testimony of each Appellant. Each Appellant stated his age; that, beginning in 1995, overtime was split between Troop S and another Troop;

---

**3.** Appellants originally alleged violations of the PHRA, the Employee Retirement Income Security Act (ERISA) and the Age Discrimination in Employment Act of 1967 (ADEA). The case was removed to federal court, where a federal district judge dismissed the federal counts (ERISA and ADEA) and remanded back to common pleas for a decision regarding the PHRA claim.

**4.** The Court's review of an order in a case in which the trial court has acted as the finder of fact is limited to determining whether the trial court committed an error of law or failed to base its findings upon substantial evidence. *Pleasant Hills Construction Co., Inc. v. Borough of Rankin,* 707 A.2d 639 (Pa.Cmwlth. 1998).

that before he retired, his overtime was restricted and he was not given the overtime he requested; that up until 1991, senior troopers, who were about to retire, were given preference for overtime; and, that all Appellants suffered a substantial loss of income.

Contrary to Appellants' position, however, the PSP contends that a claim based on Appellants' status as "retiring troopers" does not constitute age discrimination under the PHRA.

■ Our case law distinguishes between one's "age" and one's status as a "retiring employee." *Schultz v. Piro*, 40 Pa. Cmwlth. 395, 397 A.2d 484 (1979). An employment decision based on years of service is **not** necessarily related to calendar age. In *Schultz*, we addressed a challenge to a state statute that required the City of Easton, in the event of a reduction in force, to suspend those firemen who were eligible for retirement before suspending firemen with less seniority. *Id.* at 484–485. We held that the statute in question, Section 11 of the Act of May 31, 1933, P.L. 1108, *as amended*, 53 P.S. § 39871, did not violate the PHRA's proscription against age discrimination because this Section did not necessarily discriminate on the basis of age, because "years of service are not necessarily directly proportional to a fireman's calendar age." *Schultz*, 397 A.2d at 485.

The United States Supreme Court addressed a similar issue in *Hazen Paper Company v. Biggins*, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), in which the question was whether an employer violates the Age Discrimination in Employment Act of 1967 (ADEA) by acting on the basis of a factor, such as an employee's pension status or seniority, which is empirically correlated with age. *Id.* at 608. The High Court held that in an ADEA case, an employee's age is analyt-

ically distinct from his years of service. The question of liability depends on whether the protected trait under the ADEA, *i.e.*, age, actually motivated the employer's decision and played a role in the decision making process. *Id.* at 610.

■ In the case *sub judice*, it was permissible for the PSP to expressly limit overtime for troopers, who had certain specified years of service, without violating the PHRA's prohibition against age discrimination. No evidence presented established that the PSP's decisions were motivated by Appellants' ages; rather, the evidence established that Appellants merely happened to be within the protected age group of the PHRA while preparing to retire. The PSP directive supports the finding that the restriction of overtime was actually motivated by Appellants' retirement status in that it stated, in pertinent part, "[m]embers eligible for retirement at 20 to 25 years of service ... shall not be favored for assignment to overtime ... Troop Commanders and Bureau Directors shall institute measures to assure overtime is assigned on an *equitable* basis." (O.R. File Folder # 2, App. Ex. 26, p. 2) (emphasis in original). Therefore, Appellants did not sustain their burden of proving age discrimination under the PHRA because a decision motivated by an employee's years of service does not necessarily equate to age discrimination even though they correlate to each other. *Hazen Paper*, 507 U.S. at 611, 113 S.Ct. 1701.

Next, Appellants argue that the trial court erred in ruling that they must establish that younger employees were compensated at higher rates for substantially equivalent work, claiming that the trial court misunderstood their argument. Appellants assert the true basis of their argument was that younger employees were receiving more overtime than were the older employees, thus preventing the older

employees from receiving the overtime, which, as established by past practice, they were entitled to. Appellants claim that the trial court overlooked this argument.

In order to succeed on a disparate pay claim based upon age, a plaintiff must show that younger employees were compensated at higher rates for substantially equivalent work. *Tumolo v. Triangle Pacific Corp.*, 46 F.Supp.2d 410 (E.D.Pa.1999) (construing age discrimination claims premised upon both the ADEA and the PHRA). Evidence that younger employees receive a higher commission rate than older employees, without more, is insufficient to establish a disparate pay claim under the PHRA. There must be evidence that either the work assignments of older employees were not comparable to younger employees' assignments or the older employees' lower commission rate resulted in lower total compensation. *Id.*

Here, Appellants did not argue that younger troopers as a group received more overtime *pay* than they did as a group, but rather, that younger troopers were "receiving SUBSTANTIALLY more overtime than" they received, which prevented them "from getting paid the overtime which by precedent they were entitled to." (App. Br. at 25) (emphasis in original). Although the PSP's policy change may have negatively affected Appellants, Appellants failed to present evidence showing that they received lower total compensation for overtime than did younger troopers. (Tr. Ct. Op. at 9, FOF ¶ 1.) Therefore, the PSP's policy change is not a discriminatory practice under the PHRA. Accordingly, the trial court properly concluded that Appellants did not establish a disparate pay claim based upon age under the PHRA.

Finally, Appellants argue that the trial court erred in stating that Appellants did not demonstrate a "past practice"[5] and assert that the testimony of Captain Berryhill, Trooper Sullivan and Trooper Welsh establish the existence of a past practice. Appellants focus on the doctrine of past practices, as a term of art applied in the context of labor relations, and the interpretation of a collective bargaining agreement. They argue that there are four situations in which "past practices" can be used: (1) to clarify ambiguous language; (2) to implement contract language which sets forth only a general rule; (3) to modify or amend apparently ambiguous language which has arguably been waived by the parties; and (4) to create or prove a separate enforceable condition of employment which cannot be derived from the express language of the agreement. *Ellwood City Police Wage and Policy Unit v. Pennsylvania Labor Relations Board*, 731 A.2d 670, 672 (Pa.Cmwlth.1999). They contend that the trial court committed an error of law by focusing on the fourth element instead of conjunctively considering all four elements. Appellants claim that it "is clear the Collective Bargaining Agreement does not address the issue and subsequently not only ambiguous language is in question here, but it is necessary to

---

5. The trial court defined the term "past practice" as follows:

[T]he term "past practice" is not something which arises simply because a given course of conduct has been pursued by management or the employees on one or more occasions. A "past practice" is a usage evolved by men as a normal reaction to a recurring type of situation. It must be shown to be the accepted course of conduct characteristically repeated in response to the given set of underlying circumstances. It must be accepted in the sense of being regarded by the men involved as the normal and proper response to the underlying circumstances presented.

(Tr. Ct. Op. at 8) (citing *County of Allegheny v. Allegheny County Prison Employees Independent Union*, 476 Pa. 27, 35 n. 12, 381 A.2d 849, 853 n. 12 (1977)).

modified [sic] or amend language which has not been incorporated in the contract." (App. Br. at 26.)

The PSP questions whether a past practice can give rise to an enforceable right without the issue being decided in a grievance procedure. Further, the PSP argues that the trial court, as fact finder, considered conflicting testimony regarding the facts, and did not find that preferential treatment to retiring troopers regarding overtime constitutes past practice.

Here, the trial court, in a laudable effort to address Appellants' argument, considered all the testimony and found that a past practice of preferential treatment of assigning overtime to retiring troopers did not exist the year prior to their retirements in 1996 or 1997.

■ However, the issue of whether a past practice existed or did not exist under the CBA, is not relevant to the issue before us, which is whether the PSP discriminated against Appellants' on the basis of their age. Appellants seem to be alleging that the PSP committed an unfair labor practice by violating a past practice of giving overtime preference to retiring troopers. First, this is not the proper forum for such an allegation. Moreover, even if Appellants had proven that their not receiving an overtime preference was an unfair labor practice, that would not mean such practice was age discrimination. As previously discussed, years of service and age are analytically distinct. Therefore, Appellants can not prevail with this argument.

Having determined that Appellants did not sustain their burden of demonstrating age discrimination under the PHRA, we affirm the order of the trial court.

### ORDER

**NOW,** December 6, 2004, the order of the Court of Common Pleas of Lackawanna County in the above-captioned matter is hereby affirmed.