**David HOECHSTETTER, and Michael Papariella, Plaintiffs,**

**v.**

**CITY OF PITTSBURGH, Defendant.**

**No. CIV.A. 01–1337.**

United States District Court,
W.D. Pennsylvania.

Feb. 24, 2003.

Samuel J. Cordes, Esq., Pittsburgh, PA, for Plaintiffs.

Jacqueline R. Morrow, Esq., Brian P. Gabriel, Esq., Pittsburgh, PA, Gretchen K. Love, Esq., for Defendant.

*OPINION*

ZIEGLER, Senior District Judge.

Pending before the court are the parties' cross-motions (doc. nos. 15 and 20) for summary judgment on Counts I–III of the complaint pursuant to Federal Rule of Civil Procedure 56(c). Plaintiffs, David Hoechstetter ("Hoechstetter") and Michael Papariella ("Papariella") commenced this action alleging that the defendant failed to hire them on the basis of their race and gender in violation of the Equal Protection clause, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e (1994) *et seq.* For the reasons that follow, plaintiffs' motion for partial summary judgment will be denied, and

the City's motion for summary judgment will be granted.

## I. BACKGROUND

Plaintiffs are white males who applied for employment with the City of Pittsburgh's bureau of police. Plaintiffs both passed the requisite tests and were placed on the eligibility list maintained by Pittsburgh's Civil Service Commission. Based upon the combined score of physical, written and oral examinations, all applicants are given a composite score. The applicants are then listed in rank from highest composite score to lowest score on the eligibility lists. The Pennsylvania General Civil Service Act for second class cities mandates that the eligibility list remain in effect for not less than one year, but not more than three years. Once an eligibility list expires, the City begins the application and testing process anew.

When the police department plans to hire police officers, the director of public safety sends a request to the Civil Service Commission. The Commission inquires whether any of the individuals on the eligibility list are still interested in being a police officer. Interested candidates undergo a background investigation. The Commission then compiles a certification for appointment list which is created by listing in descending order the highest remaining candidates from the eligibility list who are interested in the position and have passed the background investigation.

Both plaintiffs passed the background investigation and defendant placed them on its certification for appointment list. Their files were then forwarded to defendant's selection committee for consideration.

Candidates are selected from the certification for appointment list by a process known as "the rule of three." The selection committee, comprised of the police chief, Robert McNeilly, and his command staff, reviews the files of the first three candidates on the certification for appointment list. The committee is required to select and make a conditional offer of employment to one of the three candidates. Once a candidate is selected from the first pool of three, the two candidates who were not selected are given a strike and their files remain before the command staff for consideration. The applicant file of the next person on the certification list is presented to the selection committee. The committee must then select one candidate from this group of three candidates. The new group is comprised of the new candidate and the two candidates previously passed over two or less times. Once a candidate has accumulated three strikes because he was passed over three times for names lower on the certification for appointment list, he is eliminated from consideration and removed from the list. This process is followed until the selection committee has filled a class.

Plaintiffs were placed on an eligibility list posted on November 1, 1999 and set to expire on October 31, 2001. However, the City exhausted the eligibility list in 2001, and a new eligibility list was created for recruits in 2001. Hoechstetter ranked 48 on this list and Papariella ranked 215. Both plaintiffs passed the background investigations and were placed on a certification for appointment list. Due to his high rank, Hoechstetter was placed on the first certification for appointment list dated December 22, 1999, created from the eligibility list. Papariella was placed on a subsequent certification for appointment list, dated August 10, 2000, when the police department again hired from the November 1, 1999 eligibility list.

Plaintiffs were rejected three times by the committee and eventually were eliminated from further consideration. After rejecting plaintiffs, the City continued to

hire police officer recruits from the same eligibility list. Defendant exhausted the candidates eligibility list before it was set to expire.

Plaintiffs filed charges of discrimination with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Committee. After exhausting their administrative remedies, plaintiffs filed the instant civil action. Thereafter, the City filed a motion for summary judgment and plaintiffs filed a motion for partial summary judgment.[1]

## II. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, we must examine the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of identifying the basis of the motion and the evidence which demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

In order to avoid summary judgment, the non-moving party must produce evidence that a reasonable fact-finder could find for that party. *Anderson*, 477 U.S. at 248–249, 106 S.Ct. 2505. The non-moving party must go beyond the pleadings and produce evidence through affidavits, depositions or admissions to show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. When considering the reasonable fact-finder rule, the court must apply the evidentiary standard which governs at trial. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

## III. DISCUSSION

In analyzing a claim for failure to hire under Title VII, we apply the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this scheme: (1) plaintiff bears the burden of establishing a prima facie case of discrimination; (2) the burden of production then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action; (3) if defendant meets its burden of production, plaintiff must prove by a preponderance of the evidence that defendant's proffered reason was a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

To establish a prima facie case of racial/gender discrimination in a failure to hire context, a plaintiff must show that: (1) he is a member of a protected class; (2) he applied and was qualified for a position for which the employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) after the plaintiff was

---

1. Hoechstetter asserts both gender and race discrimination claims pursuant to Title VII and Section 1983. Papariella asserts a gender claim pursuant to Title VII and Section 1983. Papariella's race discrimination claim is brought under Section 1983. All of these claims are properly analyzed under the *McDonnell Douglas* burden shifting framework. *See Stewart v. Rutgers*, 120 F.3d 426, 432 (3d Cir.1997). As such, our analysis applies to all counts.

rejected, the position remained open and the employer continued to seek applicants with plaintiff's qualifications. *Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Iadimarco v. Runyon,* 190 F.3d 151, 157 (3d Cir.1999). The standard for establishing a prima facie case of reverse discrimination in a hiring context is the same as the standard in any other case where an individual alleges discrimination. *Iadimarco v. Runyon,* 190 F.3d 151, 160–161.

Although the parties dispute whether plaintiffs have established a prima facie case of racial and/or gender discrimination, we will assume for the sake of argument that they have. As such, the burden shifts to the City to proffer a legitimate, nondiscriminatory reason for rejecting plaintiffs. *See Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817).

Defendant advances several "likely" reasons for rejecting plaintiffs. During the course of discovery, the City initially provided vague justifications for its refusal to hire plaintiffs. Plaintiffs argue that defendant's failure to provide definitive reasons for their rejection is an inadequate proffer of legitimate, nondiscriminatory reasons. Furthermore, in support of their motion for partial summary judgment, plaintiffs contend that defendant's failure to provide legitimate, nondiscriminatory reasons for its decision not to hire plaintiffs, coupled with their establishment of a prima facie case, entitles them to judgement as a matter of law. We disagree.

We note that over the course of discovery, defendant has advanced several "likely" considerations through answers to interrogatories and ultimately the deposition of Chief McNeilly. As for Papariella, without reviewing the files at the deposi-

tion, Chief McNeilly mentioned his poor credit rating. As for Hoechstetter, again without reviewing the files, Chief McNeilly simply stated that the other two candidates were more qualified. Plaintiffs' attorney refused to allow him to review the files during his questioning. However, after reviewing the files, Chief McNeilly stated that Hoechstetter did not have job stability, and most significantly, that he was a heavy user of marijuana back in the 80's at approximately the same time he was working as a paramedic. *See* Pl. Motion for Summary Judgment, Ex. 3 at 54–55. According to McNeilly, Hoechstetter further admitted he used marijuana until 1996. After reviewing Papariella's file, McNeilly noted that he had an extremely poor credit rating; he was being sued by a former landlord for damages to an apartment; he had been sued by Duquesne University for failure to pay student loans; and that his credit rating showed that he failed to pay large sums to creditors. According to McNeilly, Papariella's file was "probably the worst we have seen as far as poor credit history." *Id.* at 59–60. McNeilly also noted that Papariella quit a teaching position to be a bartender. McNeilly finally stated that "[i]f we had anybody that was less of, I guess, a liability, we would choose somebody else." *Id.* at 61.

Plaintiffs repeatedly emphasize that defendant's answers to interrogatories and responses to the EEOC were not sufficiently definitive to meet their burden of production to show legitimate, nondiscriminatory reasons for rejecting plaintiffs. Although we agree that defendant's initial answers and responses may have been overly broad and inclusive, we find that the reasons provided by Chief McNeilly at his deposition were sufficiently clear and were consistent with prior or subsequent explanations.[2]

---

2. For example, in the answers and amended

answers to interrogatories regarding the rea-

Plaintiffs cite *Iadimarco v. Runyon*, 190 F.3d 151 (3d Cir.1999) for the proposition that defendant's claim that it selected better qualified candidates is not a sufficient legitimate nondiscriminatory reason for failure to hire plaintiffs. We agree with plaintiffs that "an employer can not successfully defend a hiring decision against a Title VII challenge merely by asserting that the responsible hiring official selected the man or woman who was 'the right person for the job.'" *Iadimarco*, at 167. However, plaintiffs fail to note that the court in *Iadimarco* stated that defendant's belief that he hired an applicant because "she was the right person for the job can not, *by itself*, be accepted as an adequate race-neutral explanation for rejecting [plaintiff]." *Id.* at 167. (emphasis added). Here, in addition to defendant's statements that it hired the most qualified applicants, the City has provided several other legitimate, nondiscriminatory reasons for its decision to reject plaintiffs, including Hoechstetter's heavy drug use and Papariella's poor credit history. We find that defendant has met its burden to produce legitimate, nondiscriminatory reasons for the decision not to hire plaintiffs. *See, Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ("defendant need not persuade the court that it was actually motivated by the proffered reasons").

Thus, under the final prong of the *McDonnell Douglas* analysis, the burden shifts to plaintiffs to produce sufficient evidence to withstand summary judgment on the issue of pretext. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Plaintiffs must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve defendant's articulated legitimate reasons or (2) believe than an invidious discriminatory reason was more likely than not a motivating or determinative cause of defendant's action. *See Fuentes*, 32 F.3d at 764; *Ezold v. Wolf, Block, Schorr & Solis–Cohen*, 983 F.2d 509, 523 (3d Cir. 1992) (citation omitted). In other words, plaintiffs must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in defendant's proffered legitimate reasons such that a "reasonable fact-finder could rationally find them unworthy of credence and hence infer that the proffered nondiscriminatory reasons did not actually motivate" defendant's action. *Fuentes*, 32 F.3d at 764–765 (quoting *Ezold*, 983 F.2d at 531). Another way to establish that discrimination was more likely than not a cause of the employer's action is to show that the employer has treated more favorably similarly situated persons without the protected class. *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir.1998) (citing *Fuentes*, 32 F.3d at 765).[3]

In support of their pretext argument, plaintiffs reiterate that the defendant has

---

sons why plaintiffs were not hired, defendant responded: "The most likely considerations regarding Hoechstetter related but were not limited to speeding violations, accidents, drug use, and a bad job reference for a 1998 job that he left...The most likely considerations regarding Papariella related but were not limited to credit history, debt, lawsuit and [an] insurance fraud incident in high school." *See* Def. Motion for Summary Judgment, Ex. A and B at 2–4. The deposition testimony was entirely consistent with these answers.

**3.** The statistical evidence contradicts plaintiffs supposition that any preference has been given to minorities or women. Plaintiffs have failed to address the contention that similarly situated minorities/females were treated more favorably in their briefs, or even mention the statistical evidence. Therefore, we find that plaintiffs have failed to sustain their burden of demonstrating that discrimination was more likely than not the cause of the defendant's failure to hire them. *See, Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F.3d 639, 645.

provided evolving and allegedly inconsistent reasons for its decision not to hire plaintiffs. Specifically, plaintiffs allege that (1) defendant did not provide a legitimate reason in response to the EEOC's request (2) defendant could not provide "specific" reasons for its decision not to hire plaintiffs (3) and that the City has added and subtracted possible reasons for not hiring plaintiffs.

Plaintiffs cite *Chipollini v. Spencer Gifts, Inc.* 814 F.2d 893 (3d Cir.1987) (*en banc*), *Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), and *Farrell v. Planters Lifesavers Company*, 206 F.3d 271 (3d Cir.2000) to advance their position that "shifting" or "inconsistent" reasons for plaintiffs rejection support a finding of pretext. However, we find that these authorities are distinguishable from the present situation because they involved terminations rather than failure to hire. This dissimilarity is significant because, unlike a termination case where the employer has a working relationship with the plaintiff, the hiring committee here had no personal contact (much less a relationship) with plaintiffs. As a practical matter, the quantity of applicants would preclude the hiring committee from documenting each and every reason why one candidate was picked over the other two candidates. Furthermore, if the committee was required to take notes on each and every reason for rejecting an applicant, the hiring process would become painstakingly inefficient.

Even when viewing the evidence in the light most favorable to plaintiffs, we do not believe that the City's failure to provide (from the beginning of discovery) each and every specific reason for the rejection of plaintiffs supports plaintiffs' pretext argument. Nor do we believe that Chief McNeilly's comments regarding likely considerations for the committee's decision was inconsistent with the defendant's initial responses. Plaintiffs have failed to demonstrate any contradictions or inconsistencies in defendant's proffered legitimate reasons. Furthermore, and notably, plaintiffs have not provided any direct or circumstantial evidence from which a factfinder could reasonably conclude that an invidious discriminatory reason was more likely than not a motivating cause of defendant's decision not to hire plaintiffs.

We conclude that a reasonable juror could not find that plaintiffs' pretext arguments are worthy of credence. Viewing the facts in the light most favorable to plaintiffs, we find that plaintiffs have failed to establish sufficient evidence from which a reasonable fact-finder could rationally find that the City's articulated reasons for its failure to hire plaintiffs were without credence, or that the decision not to hire plaintiffs was motivated by race or gender.[4] Where a plaintiff is unable to show weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in defendant's reasons for its action, summary judgment is required. *See Fuentes*, 32 F.3d at 765. Plaintiffs' motion for partial summary judgment will be denied, and the City of Pittsburgh's motion for summary judgment will be granted.

An appropriate order will follow.

---

4. We reiterate that under the *McDonnell Douglas* burden shifting framework, plaintiffs have also failed to prove their Section 1983 claims.